ALBERT COLLINS, RALPH BAYLESS, RALPH ATKINS, and
WENDELL LOVEDAY

*v.*

STATE OF TENNESSEE

413 S.W.2d 683.

(*Knoxville,* September Term, 1966.)

Opinion filed March 10, 1967.

24

FRED J. MOSES, JR., Knoxville, for Albert Collins.

ROGER SMITH, Newport, for Ralph Bayless and Ralph Atkins.

FRED L. MYERS, Newport, for Wendell Loveday.

GEORGE F. MCCANLESS, Attorney General, and THOMAS E. FOX, Assistant Attorney General, Nashville, for the State; H. F. SWANN, District Attorney General, Dandridge, and J. KENNETH PORTER, Special Prosecutor, Newport, prosecuted the case in the court below for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error were indicted and convicted of breaking and entering a business place with the intent to commit larceny (burglary in the third degree). They were each sentenced to serve not less than three nor more than five years in the State penitentiary. From this conviction an appeal was prayed, briefs and arguments were filed on behalf of certain defendants and there were affidavits, etc., filed in behalf of others. Assignments of error were likewise filed in behalf of two of the plaintiffs in error wherein counsel was employed by

these two plaintiffs in error, Loveday and Collins; and from certain pleadings in the record assignments can be gathered as to the two indigent plaintiffs in error.

The prime insistence as to all the defendants is that they were twice put in jeopardy by the trial court's action in dismissing one of the jurors after this juror, Theo Parrott, had been sworn but before any evidence was introduced and the selection of another juror. It is argued in behalf of Loveday and Collins that the evidence preponderates against the verdict and in favor of their innocence, or as to Loveday it is argued that there is no evidence at all to support the verdict. It is likewise assigned as error that the trial court committed error in admitting into evidence a pair of unidentified gloves, and that the District Attorney General erroneously argued to the jury that the defendants were professional criminals.

The motion for a new trial was overruled on January 28, 1966. An order was then entered allowing sixty days from that date for preparing and filing a bill of exceptions. The bill of exceptions was not filed until April 12, 1966, or thirteen days after the time for filing had expired. Under such a situation we do not have jurisdiction to consider the bill of exceptions, T.C.A. sec. 27-111, and numerous cases cited as a footnote to this Code Section. We though for reasons stated in *Russell v. State ex rel Arthur,* 218 Tenn. 118, 401 S.W.2d 586, have reviewed the contents of what purports to be the bill of exceptions as if the same had been filed in accordance with T.C.A. sec. 27-111, supra. Insofar as the plaintiffs in error, Atkins and Bayless are concerned it being indicated in this record that they are indigent, but this is not specifically found, counsel were appointed to represent

them on this assumption at least, and thus considering this record as to these indigents under the reasoning of the *Arthur* case, supra, we likewise are apprised of all errors and complaints of Loveday and Collins; consequently, what we say herein will apply to their complaints as well.

■■ The chief argument and complaint of Loveday is that there is no evidence to support a conviction or to find that he was an aider and abettor in this burglary. Of course, if we take Loveday's statements and accept what he says as the truth of the situation his contention is correct, but upon examination of this record we find that there is ample material evidence upon which the jury found that he was an aider and abettor in this burglary and consequently under numerous authorities the jury having heard all of this and accepted it and the evidence not preponderating against it, we cannot reverse. See *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826; *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173.

Loveday testified in his own behalf that he parked his car a short distance from Dr. Robinson's office (this is where the theft took place) while the burglary was in progress, not knowing anything about it; that he "pulled up in there and backed up in there to fix my foot feed". Loveday was found by the officers parked a short distance from this doctor's office while the burglary was in progress. His car was backed off Cosby Road onto a little road leading toward the high school with the car facing the doctor's office. The officers found in his car a pair of brown cotton gloves of the same type found on some of the other defendants who were caught inside the building being burglarized. Loveday likewise, when the officers drove up, laid down on the seat of his car. He made an

explanation about his business there, but apparently this explanation was not satisfactory to the jury and apparently to them, as it is to us, it seemed so unplausible that it really amounted to some evidence of his guilt.

The other three defendants, that is Collins, Atkins and Bayless, were found in the doctor's office which was being burglarized. All of these plaintiffs in error took the witness stand and admitted the fact that they were caught in the doctor's office. Atkins and Bayless were found first. They were wearing a pair of brown cloth gloves, and it was their insistence that they were just pretending a burglary at the insistence of Dr. Robinson and that he had agreed to pay them $200.00 apiece for such a performance during the month of November prior to the burglary on Christmas night for which they were convicted. The other plaintiff in error, Collins, was found hidden in a different room of this doctor's office or clinic after Bayless and Atkins had been removed to jail. According to Collins he came there to see Dr. Robinson to purchase some "red devils", and hid in the room at the insistence of Dr. Robinson (apparently Dr. Robinson was the prosecutor) because somebody else was coming in the back door of the building.

The jury after hearing all this evidence pro and con including that of these four defendants credited the State's evidence and refused to accept the theory of the defendants as revealed by their testimony. After having read this we can very easily understand why the jury reached the verdict that it did. Thus it is, under the authority of the *Cooper* and *McBee* cases, supra, and many others, the verdict should not, and will not, be disturbed by us.

The key defense of all these men hinges around their plea of former jeopardy. There is in the file, which was filed after the record was filed in this Court, an affidavit of counsel for Collins, setting forth a copy of the voir dire wherein this question arose. There is also a statement made by the trial judge in a long memorandum that he filed in overruling the motions for a new trial which shows this fact. In examining the prospective jurors, one Theo Parrott was asked:

"Have you formed any opinion about the guilt or innocence of these defendants?

"JUROR: Of course, I read it in the papers and they were caught in the doctor's office. I just assumed they were guilty of something.

He was then challenged for cause. After this was done the court asked and said to this prospective juror:

"He just answered the question that the lawyer asked, if you are accepted as a juror, can you, and will you, lay aside that opinion and go entirely by the law which I give you and the evidence given here, regardless of what it is, whether it is favorable to the defendant or to the state?

"JUROR: Yes, sir."

Then it was that the trial court declared him a competent juror and had him seated. When the jury was thus complete the trial court swore the jury and, after various arguments about motions and objections to this juror, Parrott, that the statements he had made influenced the rest of the panel, and things of the kind, a recess was taken for lunch. When they returned from lunch, the court excused this juror, Parrott, and another juror was then selected and placed on the jury and the jury was

again sworn, the indictment read, etc., and the trial proceeded which resulted as heretofore shown.

All peremptory challenges under the statute had been exhausted and after they were all exhausted this motion was made challenging the array predicated upon the statement of the juror, Parrott, who was later excused after lunch. After this juror was sworn and the indictment was read and the defendants entered a plea of not guilty, there was no proof offered at that time. The trial judge in his statements in overruling the motion for a new trial said that since the defendants were all complaining about this juror that he then excused him after first accepting him and that this would not amount to putting these men in double jeopardy. In other words the challenge for cause as to juror, Parrott, was allowed after he had first been accepted. A serious question is thus raised as to the question of double jeopardy.

An accused is in jeopardy under the majority of opinions of the courts of this country after the jury is properly impaneled and sworn. See an ample reasonable discussion of this question in Wharton's Criminal Law and Procedure, Vol. 1, beginning at page 308. There have been many exceptions over the years to this general statement. Of course, if we take the statement on its face there would be no question about sustaining the plea herein. By the way concerning the statement made about when jeopardy attaches, see *State v. Conner*, 45 Tenn. 311, as one of the first cases in this State supporting this proposition. There are many others written along about this time wherein some of the exceptions were noted and acted on, but the general rule has been the same down through the years throughout the country. At page 318 of Wharton's, supra, the author says:

"The only causes for which a jury empaneled and sworn to try the defendant on a criminal charge can be discharged by the court without a verdict without such discharge acting as a bar to a subsequent prosecution for the same offense are (1) the consent of the defendant or his counsel; (2) illness or insanity of (a) one of the jurors [under this heading our case of *DeBerry v. State,* 99 Tenn. 207, 42 S.W. 31, is cited] (b) the defendant or (c) the court; (3) absence of a juryman; (4) impossibility of jurors' agreeing on a verdict after a reasonable time for deliberation has been allowed; (5) some untoward accident that renders a verdict impossible; and (6) extreme and overwhelming physical or legal necessity."

And further, "It is thus stated that the court may discharge a jury without working an acquittal of the defendant, in any case when the ends of justice, under the circumstances, would otherwise be defeated." Wharton's Criminal Law & Procedure, supra, pages 322 and 323.

The State argues that the principle as applied in *DeBerry v. State,* supra, is applicable in the instant case. In the *DeBerry* case a juror became sick, was excused and another juror impaneled. This was done under T.C.A. sec. 22-221, which was repealed by the General Assembly of 1959. The Court in the *DeBerry* case held under this statute a juror becoming sick could be excused and a new juror impaneled and that double jeopardy had not attached, therefore it is reasoned by the State that nothing having been done in this instance except the jury having been sworn that this was practically the same as the juror having become ill being excused.

The closest case though that we have found to the situation here is that of *Green v. State,* 147 Tenn. 299,

247 S.W. 84, 28 A.L.R. 842, wherein after a juror was sworn he arose from his place in the box and stated that he did not believe that a Christian should have anything to do with punishing people, etc. After this juror did this he was excused and another juror impaneled in his place and the case was tried. This Court held there that recognizing the rule we have announced heretofore that it amounted to double jeopardy when a jury was sworn to try the issue upon the indictment and plea thereto and before the reading of the indictment or introduction of testimony, citing authorities, but held this juror there having said what he did and being excused did not amount to double jeopardy. This *Green* opinion is a well written one by Special Justice L. D. Smith. He reviews a number of our cases as well as many United States Supreme Court cases, and among other things he quotes from *State v. Waterhouse,* 8 Tenn. 279, a paragraph, to-wit:

"The supreme court of the United States, fitted more than any other tribunal, from the necessary habits and researches of its members, to decide upon American constitutional law, have, without, so far as I can discover, a dissenting voice, held, that a court, in the exercise of a sound discretion, may discharge a jury, even in a capital case; and that the defendant may be again tried."

■■ This opinion goes on to say that the tendency to make exceptions to the general rule is done only in cases of necessity and that we in this State have recognized no discretion in the action of the trial judge beyond limits of actual necessity. The discharge of a juror for causes *propter defectum* has by this Court universally been held as placing the accused in jeopardy and entitles him to be discharged. See such cases as *Ward v. State,*

20 Tenn. 253; *State v. Conner,* 45 Tenn. 311; *Tomasson v. State,* 112 Tenn. 600, 79 S.W. 802; and *Walker v. State,* 118 Tenn. 375, 99 S.W. 366. In reading these cases we find many English cases, as well as cases from other states, are interestingly and intelligently reviewed, and the Court correctly says in the *Green* case, supra, that:

"A distinction is clearly recognized in our cases between causes *propter defectum* and causes which show that the juror had prejudged the case, or who by virtue of his state of mind could not, or would not, in fact pass upon the guilt or innocence of the accused. *Cartwright v. State,* 12 Lea, 620; *Brakefield v. State,* 1 Sneed, 215, 218."

The reading of these cases and cases generally over the country confirm without a doubt the correctness of this statement. This is the reason that the trial judge sustained the challenge or plea as to the juror, Parrott, and excused him and then impaneled another juror, because he felt that maybe from these statements that this juror had prejudged this case, and, bending backwards in a hotly contested trial, he excused this juror and placed another on the panel. In doing so, we think double jeopardy does not attach. Among other cases cited by the Court in the *Green* case, supra, the author of that opinion quotes from *Thompson v. United States,* 155 U.S. 271, 15 S.Ct., 73, 39 L.Ed., 146, thus:

"Courts of justice are invested with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and that the defendant is not thereby twice put in jeopardy."

We feel under the record in the instant case that to maintain the judicial process and utmost fairness to all of these defendants that this juror was excused so that these men could have a fair trial and that by doing this there has been no double jeopardy which attached so as to allow these men to go without being tried for the offense admittedly here committed.

■ The assignment of error complaining about the cotton gloves—that they were considered without being properly identified as an exhibit—is not argued but it appears in this record that the gloves were made an exhibit to the Sheriff's testimony. It is clear that it was the intention of the State to make the pair of gloves an exhibit to the Sheriff's testimony which were found on Collins' hands when he was arrested. The prosecutor, Dr. Robinson, testified that the three defendants found in the building were wearing brown cotton gloves; the Sheriff said the gloves were all alike. We are unable to see that there is any substance to this assignment of error.

■ The argument of the District Attorney General is not contained in what purports to be the bill of exceptions. This being true, we cannot consider it. *Beadle v. State*, 203 Tenn. 97, 310 S.W.2d 157. But, even if the statement complained of was in the bill of exceptions, it seems to us it was a perfectly proper inference that could be drawn from this record that these defendants had certain knowledge of burglarizing a place of this kind and would justify the attorney for the State in arguing that they were professionals. As we heretofore pointed out two of the plaintiffs in error had testified, and it was

their defense, that they had been employed prior to this occasion to burglarize this place by the prosecutor here.

We have carefully gone over this matter and are satisfied that there is no error herein, and thus it is that the judgment of the trial court must be affirmed.