MARGO FRESHWATER, Alias Sue Morrison, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 453 S.W.2d 446.

Court of Criminal Appeals of Tennessee. Dec. 29, 1969.

Certiorari Denied by Supreme Court April 6, 1970.

J. Frank Hall, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., Leonard T. Lafferty, and Sam J. Catanzaro, Jr., Asst. Atty. Gen., Memphis, for defendant in error.

## OPINION

RUSSELL, Judge.

The plaintiff-in-error, Margo Freshwater, hereinafter called the defendant, has through retained counsel perfected this appeal in the nature of a writ of error from her conviction of first degree murder and resultant penitentiary sentence of ninety-nine years.

On the evening of December 6, 1966, the Square D Liquor Store in Memphis was held up, the elderly gentleman who was alone tending store taken to the back room and his hands tied behind his back, whereupon while in that helpless posture he was shot to death.

Subsequent investigation pointed toward a Memphis lawyer, Glenn Nash, and the defendant. They were arrested in Mississippi. Glenn Nash was adjudged insane by a Mississippi court, and remains there committed.

Upon the trial Margo Freshwater admitted that she was present while Glenn Nash robbed the liquor store and murdered the storekeeper; but denied that she was in any way an accomplice. She contended that her participation, such as it was, and her subsequent flight with Glenn Nash were under duress and coercion and because of a fear for her own life. The jury resolved this factual issue against her. It is contended that the evidence preponderates against the jury's verdict. To this we cannot agree.

We have meticulously reviewed the evidence against the defendant, and shall not endeavor to point out in detail all of its convicting elements. Suffice it to say that the jury was well justified in finding that the

defendant cased the liquor store in question with Nash earlier in the day, drove him to that store that night to the exclusion of other liquor stores passed in route, waited upon a customer while Nash was in the back with the victim, had in her possession a .22 calibre pistol and bullets, and the victim was shot with both a .38 calibre pistol and a .22 calibre pistol. She drove the getaway car, lived with Nash as man and wife as they traveled all over the southeast spending the fruits of the robbery, and never at any time did anything consistent with non-involvement or coerced involvement right up to the time that both were arrested as they left a bus in Mississippi. She did testify, without corroboration, that she tried to leave Nash in Chattanooga. When finally arrested, she denied her true identity, and did absolutely nothing consistent with being a true victim of coercion.

Many other errors are assigned. While the defendant was in jail in Mississippi she was able to get into the adjoining cell occupied by one Johnny Box, an accused robber, and was intimate with him. This occurred on at least two occasions, and Nash was also in the adjoining cell upon at least one of these occasions. Box testified for the State as to things the defendant told him about the crime in question on these occasions. Since she had already been indicted when these conversations occurred, the defendant claims that their contents were inadmissible. She also contends that it was error to allow the witness, Johnny Box, to testify as to what Nash had admitted to him. On the first proposition, defendant relies upon Massiah v. United States, 337 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), wherein the Supreme Court held that incriminating statements ob-

tained from an accused as a result of post-indictment surreptitious interrogation by federal agents could not be used against the accused at his trial. Subsequent cases interpreting the scope of *Massiah* have expanded the holding to include within sixth amendment right to counsel protections all post-indictment statements of an accused to government agents. See Hancock v. White, 378 F.2d 479 (1st Cir. 1967). But before a defendant can rely upon alleged denials of his constitutional rights governmental action must be involved in the denial. See Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). We find, in the case sub judice, that the evidence is clear that Box was a private individual who, due to circumstances initiated by the defendant, was the recipient of information voluntarily given him by the defendant. The testimony of Box was clearly admissible.

As to the contention that it was error under Bruton v. U. S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), for Johnny Box to be allowed to testify as to what Nash told him while both were in jail, we do not find that this happened at all. Box testified:

"She said that attorney Glenn Nash came by and picked her up and Nash said that they needed some money and they went down and robbed this liquor store * * *"

As we view this, the witness was simply quoting defendant on what she said Nash had said. It was her quote, and she was confronting the witness. There is no *Bruton* violation in this. The witness also testified, under inquiry from the Court subsequent to the above testimony, as follows:

"The Court: What you are saying, was that what Miss Freshwater told you or was that what Mr. Nash told you?

"Answer: That's what both of them told me.

"The Court: You can't state what he told you.

"Answer: That's what she told me.

"The Court: If she told you that, the Court will permit you to answer that but do not state anything that Mr. Nash said, told you.

"'Mr. Hall (defendant's lawyer): I would like to move the court to instruct the jury to disregard anything that the witness said Mr. Nash said to him.

"The Court: Alright, that's correct. Gentlemen, disregard anything this witness has said that Mr. Nash said to him. You understand? I think that the last sentence there, he mentioned that he said so and so. Disregard that completely. Disregard anything that this witness says that Mr. Nash told him. Alright, go right ahead."

Obviously, the trial court was careful to keep out any testimony by this witness as to what Mr. Nash may have said, and sustained the defendant's motion to instruct the jury to disregard any such testimony. This case is readily distinguishable from *Bruton,* and clearly there is no violation of the rule of that case under these facts.

■ Defendant has made several assignments of error with respect to the judge's instruction to the jury. The judge charged the following special request of the State:

"I charge you further, gentlemen of the jury, that no person can excuse himself for the taking the life of an

innocent person, on the ground that he acted under fear, coercion, compulsion, or duress. Even extreme and inevitable necessity will not justify a man in taking another's life to save his own where there was no fault on the part of such other in producing the necessity."

Defendant contends that this charge tended to identify her as the "trigger-puller" when there was no such evidence in the record. We do not agree. This charge correctly states the law, and makes no comment upon the evidence. There was evidence under which it could be inferred that defendant fired a shot from the .22 pistol into the victim. She had both that gun and bullets for it in her possession later, according to the evidence. The fact that two guns were bought, that there were two people involved, (a man and a woman), and one gun was a .38 calibre pistol and one a .22 calibre pistol, tends to indicate that the latter was bought for her, before this crime was committed. The evidence showed that the bullets for the smaller gun were in her purse after the crime, and she told witness Box that she stashed the .22 calibre pistol inside one of her gloves beside the base to a telephone pole just before her arrest in Mississippi. She was in the store during the robbery, and the only real evidence that she did not also shoot the victim came from her testimony. Her theory that Nash used both guns to shoot the victim in order to involve her can hardly be called absolute fact under this record. We feel that the complained of charge was a correct statement of the law, given without comment upon the evidence, and was relevant to part of the State's theory under the evidence.

■ Defendant contends that the Court's charge confuses the law of aiding and abetting with the law of conspiracy, in charging as follows:

"All persons, present, aiding and abetting, or ready and consenting to aid and abet in the commission of a crime, are principals in law and punishable as such, and the act of one is the act of all. Mere presence, however, would not make a person a principal; he would have to know that the crime was being committed, and aid and abet in its commission, or be ready and consenting to aid and abet in its commission, to make him guilty as a principal.

"Also, an aider and abettor is one who advises, counsels, procures or encourages another to commit a crime.

"There must be some evidence of a participation in the crime before one can be convicted as an aider and abettor. By Section 39-109, of the Tennessee Code Annotated, aiders and abettors are deemed principal offenders and may be punished as such. Before one can be thus convicted there should be some evidence, at least circumstantial, that the aider and abettor participates in the crime.

"One cannot render himself criminally liable as an aider and abettor for aiding in the commission of an act which is not in fact criminal. One may, however, be guilty as an aider and abettor notwithstanding the actual perpetrator of the crime is not criminally responsible by reason of insanity or otherwise."

The defendant complains of the language to the effect that "the act of one is the act of all"; which language, if

taken out of context, is more properly descriptive of the crime of conspiracy. However, the instruction when taken as a whole is a proper instruction. It first defines the class to which the act of one would be the act of all, being "all persons, present, aiding and abetting, or ready and consenting to aid and abet in the commission of a crime." Members of *this* class are to be treated as principals, with the criminal acts of the principals, in which they participated, imputable to them. The charge as a whole fully and correctly charged the law with respect to aiders and abettors, and is not erroneously misleading the particular assigned.

■ The following charge is assigned as error:

"The Court instructs you that a killing by one of a party, in the pursuit of an unlawful purpose involving the use of violence in which both are engaged, is the act of both who engaged in the unlawful purpose. In such case the law presumes they had come to make good their designs against all opposition."

This charge is a direct quotation from the case of Woodruff v. State, 164 Tenn. 530, 51 S.W.2d 843, and was proper.

■ Error is assigned upon the following charge:

"If any evidence has been introduced in this case tending to show the commission by the defendant of similar offenses to that charged in the indictment in the case on trial, the jury may consider such evidence, along with all the evidence in the case, for the purpose of determining the motive and intent of the defendant; whether or not the defendant had guilty knowledge of said acts, scheme or operation; whether or not the acts

charged in the indictment, if proven, were or were not parts of a plan, scheme or system. It must always be kept in mind by the jury that the defendant is being tried on the charge in the indictment and that alone."

Defendant contends that there was no evidence in the record that she had ever been guilty of similar offenses, and that the giving of this charge suggested to the jury that she had been. We cannot agree. Evidence was introduced by the defense that Glenn Nash had been committed to a hospital for the insane in Mississippi, resulting from criminal activity in that state. One witness for the State, Essie Lee Wiggins, was cross-examined about her prior testimony in two trials held in DeSota County, Mississippi, relating to matters involving the defendant. With this in the record, the trial judge, out of an abundance of caution, after prefacing the charge with "if any evidence has been introduced * * *", correctly stated the law. This was not error.

■ Complaint is made that two special requests of the defendant were improperly refused. We find that these special requests were adequately covered in the general charge, so were properly refused. Bostick v. State, 210 Tenn. 620, 360 S.W.2d 472; Hall v. State, 200 Tenn. 436, 292 S.W.2d 716.

■ The defendant assigns as error the extent of the punishment given her by the jury; saying that a sentence of 99 years is so excessive as to indicate passion, prejudice and caprice on the jury's part. The defendant was convicted of murder in the first degree, and the punishment set is within the limits allowed by law for such crime. It cannot, therefore, be said that the jury's verdict as to punishment indicated passion, prejudice or caprice

on their part. Ryall v. State, 204 Tenn. 422, 321 S.W.2d 809; Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523.

 The defendant contends that it was error to admit into evidence a photograph of the deceased lying on a tray in the morgue. The corpus delicti had been stipulated.

This admission is discretionary with the trial judge. Palmer v. State, Tenn.Cr.App., 435 S.W.2d 128; 2 Wharton's Criminal Evidence § 686. Where the material facts sought to be shown by the photograph have been established, an abuse of discretion is not shown unless the photograph is likely to inflame or arouse the jury. We have carefully examined the photograph in this case and do not believe that it would have inflamed or aroused the jury. The admission of such photographs, when their probative value is negligible, should be done with great care; as most such photographs will inflame or arouse the jury. We find no prejudicial error here.

 Error is assigned upon the introduction of Hillman Robbins, Jr., as the State's first witness, proving by him the death of his father. The witness is a prominent professional golfer, and defendant contends that having him to testify aroused and inflamed the jury. He was a perfectly proper witness, and the fact that the defendant and her accomplice chose the father of a prominent citizen to brutally murder places no burden upon the State to hide the identity of those thus made to suffer most. There is nothing in this record to show that this witness was called for the calculated purpose of arousing and inflaming the jury.

The defendant contends that new evidence has been

discovered which, if heard by a jury, would properly change the result of her trial. The thrust of this newly-discovered evidence is that one Charles Cleaves cashed a check for witness Johnny Box near the time of defendant's trial, which check was apparently given in connection with Box's appearance as a witness for the State. The evidence further included remarks purportedly made by Box to Cleaves while cashing the check to the effect that he, Box, would step on anyone to keep from spending five years in the penitentiary.

■■■■■ T.C.A. §§ 40-2421 and 24-402 provide for the compensation of witnesses in criminal cases. So, the payment of an amount provided by law to Box as a witness for the State would be entirely proper and would not discredit his testimony in any way. And the alleged remarks by Box to Cleaves do not constitute such newly discovered evidence as would entitle the defendant to a new trial. This is a discretionary matter with the trial judge. Moore v. State, 96 Tenn. 209, 33 S.W. 1046; Hawkins v. State, 220 Tenn. 383, 417 S.W.2d 774. We find no abuse of his discretion. Further, newly discovered evidence which is merely cumulative and newly discovered evidence which is merely impeaching will not constitute grounds for a new trial. Gentry v. State, 184 Tenn. 299, 198 S.W.2d 643; Harper v. State, 206 Tenn. 509, 334 S.W.2d 933; Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863. This would appear to be evidence aimed at impeaching Johnny Box.

■■■■ Finally, defendant assigns error upon certain aspects of the jury selection and upon remarks made by the State's attorney in his closing argument to the jury. None of these alleged errors is reflected in the technical

record or the bill of exceptions, since the affected areas were not included therein. We, therefore, cannot consider these assignments. Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105; Collins v. State, 220 Tenn. 23, 413 S.W.2d 683.

We affirm the judgment of the trial court.

HYDER and MITCHELL, JJ., concur.