IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2007 Session

## MARGO FRESHWATER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-27089     W. Otis Higgs, Judge**

---

**No. W2006-01758-CCA-OT-CO  - Filed October 8, 2008**

---

Petitioner, Margo Freshwater, again seeks relief from the trial court's denial of her petition for writ of error coram nobis.  In an earlier appeal, after determining that Petitioner's petition for writ of error coram nobis was not barred by the statute of limitations, this Court remanded the matter to the trial court for an evidentiary hearing on the petition.  *See Freshwater v. State*, 160 S.W.3d 548, 558 (Tenn. Crim. App. 2004).  In that hearing on remand, Petitioner was to be given "the opportunity to establish that there is a 'reasonable probability' that the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial." *Id.* Petitioner was also required to establish that she was "without fault in failing to present the newly discovered evidence at the appropriate time." *Id.*  After conducting the evidentiary hearing on remand, the trial court denied the petition.  The trial court ruled that this Court had already made the determination that Petitioner was without fault in failing to discover and present the evidence at the appropriate time.  Further, the trial court determined that Petitioner failed to demonstrate that the presentation of the suppressed exculpatory evidence "would have" led to a different result if presented at Petitioner's trial.  Because this Court's determination as to Petitioner's fault in the first appeal was applicable solely to whether the statute of limitations for presentation of the writ of error coram nobis should be tolled and because the trial court utilized a "would have" rather than a "may have" standard to determine whether Petitioner was entitled to coram nobis relief, we reverse and remand the matter to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS AND NORMA MCGEE OGLE, JJ., joined.

Stephen Ross Johnson, Ritchie, Dillard & Davies, Knoxville, Tennessee, for the appellant, Margo Freshwater.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General, and John Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

On overview of the facts underlying Petitioner's 1969 conviction for first degree murder and 2003 petition for writ of error coram nobis were supplied by this Court on appeal from the first denial of the petition for writ of error coram nobis:

> The petitioner and Glenn William Nash, a Memphis attorney, were indicted in March of 1968 for first degree murder and felony murder in the death of Hillman C. Robbins, Sr., a cashier of the Square D Liquor Store in Memphis. Mr. Nash took money from the register prior to taking the victim to the back room of the store where his hands were tied behind his back. The victim was shot multiple times in the head with both a .22 caliber pistol and a .38 caliber pistol. After traveling throughout the Southeast, the petitioner and Mr. Nash were eventually arrested in Mississippi.
>
> Mr. Nash was later found incompetent to stand trial. He has never been tried and the charges against him were ultimately dismissed on the basis of a speedy trial violation. The petitioner, on the other hand, was tried in Shelby County in early 1969. After a trial on the merits, the petitioner was found guilty of first degree murder.
>
> At trial, the petitioner maintained that her participation in the robbery and subsequent flight with Mr. Nash were the result of duress and coercion. The prosecution offered evidence that the victim had been shot with a .22 caliber pistol. There was testimony introduced, through Johnny Box,[FN1] that the petitioner possessed a .22 caliber weapon. As a result of this testimony, the State argued that the petitioner was responsible for shooting the victim with the .22 caliber weapon. The petitioner's testimony, on the other hand, indicated that she knew nothing of Mr. Nash's plan to rob the liquor store or shoot the cashier and that she cooperated with Mr. Nash only because she was in fear for her life. She maintained that Mr. Nash instructed her to exit the liquor store prior to the time that the victim was killed and that she did not fire a gun. She denied that she was in any way an accomplice. After being found guilty of first degree murder, the petitioner was sentenced by the jury to a ninety-nine year sentence and sent to the Tennessee Prison for Women in Nashville.
>
> > FN1. While incarcerated in Mississippi, the petitioner was in a cell next to Mr. Box, an accused robber, and Mr. Nash. The petitioner

was intimate with Mr. Box on several occasions and the two had numerous conversations about the murder of the liquor store cashier during these encounters. Mr. Nash was present on at least one of these occasions. Mr. Box became a key witness for the prosecution at trial.

On direct appeal, this Court affirmed the conviction. *See Freshwater v. State*, 2 Tenn. Crim. App. 314, 453 S.W.2d 446 (1969). In that appeal, the petitioner challenged the sufficiency of the evidence, statements made by Mr. Box as inadmissible hearsay, jury instructions, her sentence, the introduction of a photograph of the deceased, and the testimony of the victim's son. *See id.* The petitioner also alleged that newly discovered evidence existed which would have changed the outcome of her trial.[FN2]

> FN2. The newly discovered evidence in the direct appeal related to the discovery of evidence that Mr. Box was paid for his testimony by the State and did not relate at all to the claim of newly discovered evidence as alleged in the petition for writ of error coram nobis.

This Court determined that none of the petitioner's allegations had merit. The opinion, written by Judge Russell, determined that the jury was "well justified" in determining that

> the defendant cased the liquor store in question with Nash earlier in the day, drove him to that store that night to the exclusion of other liquor stores passed in route, waited upon a customer while Nash was in the back with the victim, had in her possession a .22 caliber pistol and bullets, and the victim was shot with both a .38 caliber pistol and a .22 caliber pistol. She drove the getaway car, lived with Nash as man and wife as they traveled all over the southeast spending the fruits of the robbery, and never at any time did anything consistent with non-involvement or coerced involvement right up to the time that both were arrested as they left a bus in Mississippi. She did testify, without corroboration, that she tried to leave Nash in Chattanooga. When finally arrested, she denied her true identity, and did absolutely nothing consistent with being a true victim of coercion.

*Id.* at 448-49.

On October 4, 1970, less than a year after the petitioner's conviction was affirmed, she escaped from the Tennessee Prison for Women. The petitioner remained at large until May 19, 2002, when she was apprehended and arrested in

Columbus, Ohio. During the 32 years following her escape, the petitioner became a mother and grandmother and was married twice. After legal proceedings in Ohio, the petitioner was extradited to Tennessee. She later pled guilty to the charge of escape.

On February 6, 2003, the petitioner filed a petition for writ of error coram nobis. In that petition, she claimed that prior to the 1969 trial, her attorney requested any written statements that she made to any witnesses that were reduced to writing, including the written statement of "any informer once held in the DeSoto County [Mississippi] Jail." Unknown to the petitioner's counsel at the time of trial, trial counsel for the prosecution referred the request to the Executive Assistant Attorney General who instructed trial counsel for the prosecution to refuse to provide the entire statement of Mr. Box to the defense because Mr. Box "was not a law-enforcement officer of the State of Tennessee, and the statement was not made in Tennessee." Apparently, Mr. Box made several statements to authorities in which he recounted his conversations with the petitioner and Mr. Nash while incarcerated in the DeSoto County, Mississippi jail. Portions of these statements were given to the petitioner during discovery, including the last page of Mr. Box's statement, which was produced to and utilized by the defense counsel in cross-examining Mr. Box at trial. However, a portion of Mr. Box's handwritten statement that contained statements made by Mr. Nash to Mr. Box was never turned over to defense counsel. That statement was discovered in 2002 by current counsel for the petitioner and one of the original prosecutors during a review of the District Attorney's case file. The undisclosed portion contained a confession made by Mr. Nash to Mr. Box that he was the only shooter of the victim. The coram nobis petition alleges that the suppression of this evidence was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d (1963), because the evidence was obviously exculpatory in nature and should have thus been turned over to the defense in response to discovery.

. . . .

In response to the allegations in the petition for writ of error coram nobis, the State filed a motion to dismiss based on the one-year statute of limitations for coram nobis relief contained in Tennessee Code Annotated section 27-7-103. The trial court held a hearing on the motion to dismiss, at which the trial court heard argument from counsel for both the petitioner and the State. The trial court granted the motion to dismiss, determining that the petitioner failed to file her petition within the one-year statute of limitations and failed to demonstrate that due process required the tolling of the statute of limitations.

*Freshwater*, 160 S.W.3d at 550-52. Petitioner appealed the dismissal of the petition for writ of error coram nobis to this Court. On appeal, we concluded that Petitioner's petition for writ of error coram

-4-

nobis was not barred by the expiration of the statute of limitations. *Id.* at 558. Specifically, we determined:

> [T]he decision of the trial court dismissing the portion of the writ of error coram nobis alleging the discovery of new evidence should be reversed and the case remanded for a hearing. At the hearing, the petitioner will have the opportunity to establish that there is a "reasonable probability" that the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial. *See* Tenn. Code Ann. § 40-26-105; [*State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002)]. If she makes this showing, and if she also establishes that she "was without fault" in failing to present the newly discovered evidence at the appropriate time, she will be entitled to a new trial. *Id.*; *see also* [*Workman v. State*, 41 S.W.3d 100, 104 (Tenn. 2001); *State v. Mixon*, 983 S.W.2d 661, 673 (Tenn. 1991)]. Further, we affirm the portion of the trial court's decision dismissing the portion of the petition relating to the allegations of juror misconduct as those allegations should have been brought in a post-conviction proceeding.

*Id.*

On remand, the trial court held an evidentiary hearing on the petition for writ of error coram nobis. At the hearing, Petitioner presented the testimony of retired judge for the Shelby County Criminal Court and State of Tennessee senior judge Honorable L. Terry Lafferty. Judge Lafferty was assistant counsel for the prosecution at Petitioner's 1969 trial.[1]

Judge Lafferty was contacted by counsel for Petitioner in 2002 and agreed to sit down with counsel to review the prosecution's trial file from the 1969 trial. During their review of the prosecution file, Judge Lafferty found a request by Jay Frank Hall, Petitioner's trial counsel, dated June 20, 1968, in which he requested "copies of [Petitioner's] statements and any other statements that he was entitled to under our procedure at the time" and statements of "any informer once held in the DeSoto County Jail." The file also contained a typewritten note, dated June 21, 1968, memorializing the State's decision not to provide defense counsel with Mr. Box's statement. That note states:

> On 6/21/68, I told Atty. Frank Hall, after conferring with Genl. Dwyer, that we would not furnish him a copy of the statement of Jimmy [sic] Box, Since [sic] this witness, Jimmy [sic] Box was not a law enforcement officer of the state of Tennessee, and the statement was not made in Tenn.

---

[1]Petitioner also presented the testimony of Kenneth Armstrong, one of the jurors from the 1969 trial. Mr. Armstrong's testimony was presented in support of Petitioner's constitutional claims surrounding the jury's consideration of extraneous prejudicial information at trial. This Court has already determined that these claims were time-barred. *Freshwater*, 160 S.W.3d at 558. Accordingly, we do not find it necessary to include a summary of Mr. Armstrong's testimony herein.

Before trial, the Asst. trying this case should check with the officers of the MPD who heard the oral statement of the def. and make sure that no one else was present at the time who heard this statement.

The file also contained a receipt, signed by Attorney Hall, noting that he obtained a "portion of a statement from [Mr. Box], who was an inmate in the DeSoto County Jail with [Petitioner] back in [1968]."

The handwritten statement of Mr. Box, in its entirety, discussed Mr. Nash's confession to Mr. Box that was given while the two were incarcerated together in Mississippi. In the statement, Mr. Box claimed that Mr. Nash told him that he was solely responsible for the murder of Hillman Robbins. The last page of Mr. Box's statement contains the statements made by Petitioner to Mr. Box. The last page of the statement was provided to Attorney Hall prior to Petitioner's trial.

According to Judge Lafferty, the law at that time did not permit a co-defendant to obtain a copy of the statements of their co-defendants. Judge Lafferty opined that counsel for Petitioner was probably not given the entire statement of Mr. Box. Further, Judge Lafferty testified that he did not have any "recollection" whether counsel for Petitioner was "formally" given the statement but that it was possible that the attorneys could have had an "informal conversation" regarding the existence and substance of the remainder of the statement.

On cross-examination, Judge Lafferty pointed out that Mr. Nash was basically "unavailable" to testify for trial because he had already been declared incompetent. Further, Judge Lafferty stated that the portion of Mr. Box's statement containing information about what Mr. Nash told Mr. Box amounted to hearsay. Finally, Judge Lafferty informed the court that counsel for Petitioner was aware of Mr. Box's existence prior to trial and could have interviewed him at any time.

After hearing the testimony at the hearing, the trial court took the matter under advisement. Later, in a written order, the trial court denied the petition for writ of error coram nobis. Petitioner appeals this decision.

*Analysis*

On appeal, Petitioner contends that the trial court made several errors in denying coram nobis relief. First, Petitioner contends that the trial court did not "conduct the appropriate legal analysis subsequent to remand from this Court." Specifically, Petitioner argues that the trial court should have determined, as instructed by this Court on remand, if there was a "reasonable probability that Mr. Nash's confession *may have* resulted in a different judgment had it been admitted" at trial, rather than making the decision to deny coram nobis relief on "whether [Petitioner] *would have* been convicted as an aider and abettor even if the confession of Mr. Nash had been presented to and considered by the jury at her trial" (emphasis added). Secondly, Petitioner asserts that even if the trial court "applied the proper analytical framework, there is a reasonable probability that the suppressed confession of Glenn Nash may have resulted in a different judgment if it had been

-6-

admitted at the previous trial." In other words, Petitioner argues that the trial court not only utilized the incorrect standard but reached the incorrect result. The State, on the other hand, contends that Petitioner has: "(1) failed to show that she was without fault in failing to present the newly discovered evidence at the appropriate time and (2) failed to prove that the admission of the 'newly discovered' evidence may have resulted in a different judgment."

As stated by this Court in the prior appeal:

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. That statute provides, in pertinent part:

> [t]he relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

The writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The "purpose of this remedy 'is to bring to the attention of the court some fact unknown to the court which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988), *overruled on other grounds by Mixon*, 983 S.W.2d at 671 n.3.

A petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Hart*, 911 S.W.2d at 374-75.

*Freshwater*, 160 S.W.3d at 553.

On remand, the trial court correctly stated in its order denying coram nobis relief that in order to succeed on her petition, Petitioner had to "demonstrate that the evidence is in fact new evidence; if presented at trial the evidence may have resulted in a different judgment; and that she was without fault in failing to present the newly discovered evidence at the appropriate time." However, the trial court found that this Court "removed" the issue of Petitioner's fault from consideration when we determined that "petitioner's allegations of newly discovered evidence in the context of violations of *Brady v. Maryland* were not, and could not have been litigated previously," and that any delay in obtaining this evidence "is not attributable to the fault of the petitioner or her attorneys." *See Freshwater*, 160 S.W.3d at 555-56. The trial court also found that this Court made that determination by stating: "despite petitioner's discovery request for statements of Mr. Box prior to trial, the existence of the evidence was not discovered until September of 2002, when current counsel reviewed the District Attorney's case file from the original trial." *Id.* at 556. The trial court disagreed with this Court's conclusion on remand but stated that it was "bound" by this Court's holding in regard to Petitioner's fault in failing to present the evidence of the remainder of Mr. Box's statement. The trial court stated: "at the very least, it appears counsel was aware that the informant Johnny Box had given some type of statement to authorities" and there was evidence that "indicate[d] counsel may have been aware of the Nash portion of Box's statement." To support this conclusion, the trial court pointed to portions of the trial transcript wherein Mr. Box was "repeatedly admonished not [to] say 'what Nash told you.'" The trial court also noted that in Petitioner's motion for new trial, she claimed she was "prejudiced" because Mr. Box testified about what Mr. Nash "admitted to him after the termination of the alleged conspiracy" while the three were in jail in Mississippi. The trial court concluded, "despite the State's arguments that defense counsel likely knew of the Nash admissions this court will assume for purposes of review that his information was unknown to counsel at the time of trial." Thus, the trial court determined that it was bound by this Court's determination in *Freshwater* regarding Petitioner's fault.

It appears that the trial court misconstrued the mandate prescribed by this Court in *Freshwater*. In *Freshwater*, this Court did make a determination as to Petitioner's fault. However, we determined that Petitioner was without fault in failing to present the evidence in a timely fashion merely in the context of a due process analysis relevant to whether the statute of limitations for coram nobis relief should be tolled. Our determination of fault did not pertain to Petitioner's fault in "failing to present the newly discovered evidence at the appropriate time," in this case, at trial. *See id.* at 556-58. We directed the trial court to make this determination on remand. In fact, this Court specifically set forth that on remand, Petitioner must "establish[] that she was 'without fault' in failing to present the newly discovered evidence at the appropriate time" to be entitled to a new trial. *Id.* at 558. Consequently, the trial court was not "bound" by this Court's decision. Rather, this Court directed the trial court on remand to determine Petitioner's fault in failing to present the evidence of the portion of Mr. Box's at trial.

The trial court determined that the only remaining issue was "what effect this evidence may have had on petitioner's trial." The trial court again stated that this Court "tailored" the review of

the issue on remand by determining that the statements made by Mr. Box about Mr. Nash's admissions were "obviously exculpatory in nature as they corroborated the testimony of the petitioner." *Id.* at 557. The trial court stated that it would "accept the proposition that the evidence was not provided to or known to defense counsel and that, if provided, the evidence would have been admitted," but that "even if the new evidence were introduced, the culpability of the defendant remains the same" and there was "still ample evidence to support a guilty verdict." The trial court felt that Petitioner could have and would have been found guilty as an aider and abettor and would have therefore been punished to the same degree as a principal. The trial court concluded that it was "simply not persuaded that there is a reasonable probability that had Nash's admissions to Box been introduced a different result may have occurred."

At the conclusion of its order denying the petition for coram nobis relief, the trial court made the following statement summarizing its ruling:

> Upon remand from the Tennessee Court of Criminal Appeals, this court finds that the only issue left to be decided is whether there is a reasonable probability that, had the petitioner presented the evidence of codefendant's exculpatory admissions to the jury at trial, there *would have* been a different result. Having answered that question in the negative, finding that petitioner has failed to demonstrate that presentation of such evidence at trial *would have* led to a different result, petitioner Freshwater's petition for Writ of Error Coram Nobis and request for a new trial is; hereby, DENIED.

(emphasis added).

After reviewing the trial transcript, the transcript of the hearing on the writ of error coram nobis, and the trial court's lengthy ruling, we determine that the trial court utilized an incorrect standard to determine the potential effect of the newly discovered evidence on the verdict. Recently, in *State v. Vasques*, 221 S.W.3d 514 (Tenn. 2007), the supreme court examined whether coram nobis relief was available for six defendants convicted of conspiracy to possess with intent to sell more than 70 pounds of marijuana within 1000 feet of a school zone. On appeal, petitioners claimed that there was newly discovered evidence that an officer involved in surveillance had stolen drugs from the evidence room and used cocaine. *Id.* at 517. The trial court granted the writ of error coram nobis as to all six defendants, and the State appealed. *Id.* On appeal, this Court affirmed the judgment of the trial court with respect to two of the six defendants and reversed the judgment as to the remaining four. *Id.* The supreme court granted permission to appeal. On appeal, the court noted that there was some discrepancy among the courts of the state in the application of the standard to determine whether relief should be granted on a writ of error coram nobis. *Id.* at 525-28. The court specifically pointed to several prior opinions from this state and the statute for coram nobis relief, T.C.A. § 40-26-105, noting that there were two standards that had been applied on the basis of whether the newly discovered evidence "would have" or "may have" resulted in a different judgment at trial. *Id.* In *Vasques*, the supreme court examined both *State v. Mixon*, 983 S.W.2d 661 (Tenn. 1999), and *State*

*v. Workman*, 111 S.W.3d 10 (Tenn. Crim. App. 2002). *Vasques*, 221 S.W.3d at 525-28. This Court relied on both of these opinions in Petitioner's earlier appeal of the denial of coram nobis relief.

Our supreme court ultimately concluded:

> In an effort to amplify the standard established in *Mixon* and confirmed by our own decision in *Workman*, we hold that in a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result. In the Court of Criminal Appeals opinion in this case, Judge Joseph M. Tipton described the analysis as follows: "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." Although imprecise, our standard, which requires determination of both the relevance and the credibility of the discovered information, offers a balance between the position of the State and that of the defense. In our view, this interpretation upholds the traditional, discretionary authority of our trial judges to consider the new evidence in the context of the trial, to assess its veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome.

*Id.* at 527-28.

After clarifying the standard to be used, the court concluded that this Court had properly affirmed the grant of coram nobis relief to two of the defendants, Vasquez and Garza, because the officer's testimony directly implicated these two defendants. *Id.* at 528. According to the remaining testimony at trial, defendants Vasquez and Garza were not apprehended at the location where the drug transaction took place, they were not found in possession of marijuana, and they did not have a device that would have enabled them to have direct contact with the other co-conspirators. *Id.* at 528. Further, the court noted that Vasquez and Garza did not attempt to flee when approached by the authorities. The court looked at the evidence introduced at trial and concluded that "knowledge by the jury of [the officer's] theft of confiscated drugs and his illegal use of cocaine was credible, relevant evidence of the kind and quality that might have produced a different result as to Vasquez and Garza." *Id.* As to the other defendants, the court opined that while the evidence of the officer's improprieties would likely have a deleterious effect on the integrity of the overall drug operation, there was testimony of approximately fifteen other law enforcement officials as to the other four defendants' involvement in the drug transaction and evidence of their direct participation at the scene of the transaction involving a large quantity of drugs. *Id.* at 529. In other words, as to the remaining defendants, the "mere possibility of a different result in their cases [was] not enough to warrant relief under writ of error coram nobis." *Id.*

In this case, the trial court determined whether the evidence "would have" resulted in a different verdict at trial, as opposed to whether the evidence "may have" resulted in a different outcome. While this appears at first glance to be a matter of mere semantics, the difference in the analysis of the situation under a "would have" standard is definitively more burdensome for a coram nobis petitioner than would be the case under a "may have" standard.

Accordingly, this case is remanded to the trial court for further proceedings. On remand Petitioner should be permitted to present evidence that she was without fault in presenting the exculpatory evidence at trial. In addition, as instructed by *Vasquez*, the trial court should make the determination of whether the exculpatory evidence "may have led to a different result at trial." *See Id*.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE