IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 4, 2004 Session

## MARGO FRESHWATER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-27089   W. Otis Higgs, Jr., Judge**

---

**No. W2003-01343-CCA-R3-CO  - Filed September 1, 2004**

---

The petitioner, Margo Freshwater, was convicted of first degree murder in 1969. Her conviction was affirmed on direct appeal. See Freshwater v. State, 453 S.W.2d 446 (Tenn. Crim. App. 1969). In 2003, she filed a petition for writ of error coram nobis, alleging that new evidence existed that proved her innocence, as well as complaining of violations of Brady v. Maryland, 373 U.S. 83 (1963), and juror misconduct that occurred at trial which necessitated a hearing and ultimately a new trial. Prior to a hearing, the trial court granted a motion to dismiss the petition because the petition was, inter alia, filed outside the statute of limitations. The petitioner seeks a reversal of the trial court's decision on appeal. Because due process requires the tolling of the statute of limitations for filing the petition for writ of error coram nobis with respect to the petitioner's claim of previously withheld exculpatory evidence, we reverse the judgment of the trial court and remand the matter for an evidentiary hearing on the petition. As to the remaining allegations of juror misconduct, we conclude those allegations could have and should have been addressed in a post-conviction petition and are now time-barred. Thus, we affirm the portion of the trial court's order dismissing the part of the petition for writ of error coram nobis pertaining to those claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed in Part, Reversed in Part and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and JAMES CURWOOD WITT, JR., JJ., joined.

Robert W. Ritchie and Stephen Ross Johnson, Knoxville, Tennessee for the appellant, Margo Freshwater.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and John Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The petitioner and Glenn William Nash, a Memphis attorney, were indicted in March of 1968 for first degree murder and felony murder in the death of Hillman C. Robbins, Sr., a cashier of the Square D Liquor Store in Memphis. Mr. Nash took money from the register prior to taking the victim to the back room of the store where his hands were tied behind his back. The victim was shot multiple times in the head with both a .22 caliber pistol and a .38 caliber pistol. After traveling throughout the Southeast, the petitioner and Mr. Nash were eventually arrested in Mississippi.

Mr. Nash was later found incompetent to stand trial. He has never been tried and the charges against him were ultimately dismissed on the basis of a speedy trial violation. The petitioner, on the other hand, was tried in Shelby County in early 1969. After a trial on the merits, the petitioner was found guilty of first degree murder.

At trial, the petitioner maintained that her participation in the robbery and subsequent flight with Mr. Nash were the result of duress and coercion. The prosecution offered evidence that the victim had been shot with a .22 caliber pistol. There was testimony introduced, through Johnny Box,[1] that the petitioner possessed a .22 caliber weapon. As a result of this testimony, the State argued that the petitioner was responsible for shooting the victim with the .22 caliber weapon. The petitioner's testimony, on the other hand, indicated that she knew nothing of Mr. Nash's plan to rob the liquor store or shoot the cashier and that she cooperated with Mr. Nash only because she was in fear for her life. She maintained that Mr. Nash instructed her to exit the liquor store prior to the time that the victim was killed and that she did not fire a gun. She denied that she was in any way an accomplice. After being found guilty of first degree murder, the petitioner was sentenced by the jury to a ninety-nine year sentence and sent to the Tennessee Prison for Women in Nashville.

On direct appeal, this Court affirmed the conviction. See Freshwater v. State, 453 S.W.2d 446 (Tenn. Crim. App. 1969). In that appeal, the petitioner challenged the sufficiency of the evidence, statements made by Mr. Box as inadmissible hearsay, jury instructions, her sentence, the introduction of a photograph of the deceased, and the testimony of the victim's son. See id. The petitioner also alleged that newly discovered evidence existed which would have changed the

---

[1]While incarcerated in Mississippi, the petitioner was in a cell next to Mr. Box, an accused robber, and Mr. Nash. The petitioner was intimate with Mr. Box on several occasions and the two had numerous conversations about the murder of the liquor store cashier during these encounters. Mr. Nash was present on at least one of these occasions. Mr. Box became a key witness for the prosecution at trial.

outcome of her trial.[2] This Court determined that none of the petitioner's allegations had merit. The opinion, written by Judge Russell, determined that the jury was "well justified" in determining that

> the defendant cased the liquor store in question with Nash earlier in the day, drove him to that store that night to the exclusion of other liquor stores passed in route, waited upon a customer while Nash was in the back with the victim, had in her possession a .22 calibre pistol and bullets, and the victim was shot with both a .38 calibre pistol and a .22 calibre pistol. She drove the getaway car, lived with Nash as man and wife as they traveled all over the southeast spending the fruits of the robbery, and never at any time did anything consistent with non-involvement or coerced involvement right up to the time that both were arrested as they left a bus in Mississippi. She did testify, without corroboration, that she tried to leave Nash in Chattanooga. When finally arrested, she denied her true identity, and did absolutely nothing consistent with being a true victim of coercion.

Id. at 448-49.

On October 4, 1970, less than a year after the petitioner's conviction was affirmed, she escaped from the Tennessee Prison for Women. The petitioner remained at large until May 19, 2002, when she was apprehended and arrested in Columbus, Ohio. During the 32 years following her escape, the petitioner became a mother and grandmother and was married twice. After legal proceedings in Ohio, the petitioner was extradited to Tennessee. She later pled guilty to the charge of escape.

On February 6, 2003, the petitioner filed a petition for writ of error coram nobis. In that petition, she claimed that prior to the 1969 trial, her attorney requested any written statements that she made to any witnesses that were reduced to writing, including the written statement of "any informer once held in the DeSoto County [Mississippi] Jail." Unknown to the petitioner's counsel at the time of trial, trial counsel for the prosecution referred the request to the Executive Assistant Attorney General who instructed trial counsel for the prosecution to refuse to provide the entire statement of Mr. Box to the defense because Mr. Box "was not a law-enforcement officer of the State of Tennessee, and the statement was not made in Tennessee." Apparently, Mr. Box made several statements to authorities in which he recounted his conversations with the petitioner and Mr. Nash while incarcerated in the DeSoto County, Mississippi jail. Portions of these statements were given to the petitioner during discovery, including the last page of Mr. Box's statement, which was produced to and utilized by the defense counsel in cross-examining Mr. Box at trial. However, a portion of Mr. Box's handwritten statement that contained statements made by Mr. Nash to Mr. Box was never turned over to defense counsel. That statement was discovered in 2002 by current counsel for the petitioner and one of the original prosecutors during a review of the District Attorney's case

---

[2]The newly discovered evidence in the direct appeal related to the discovery of evidence that Mr. Box was paid for his testimony by the State and did not relate at all to the claim of newly discovered evidence as alleged in the petition for writ of error coram nobis.

file. The undisclosed portion contained a confession made by Mr. Nash to Mr. Box that he was the only shooter of the victim. The coram nobis petition alleges that the suppression of this evidence was a violation of Brady v. Maryland, 373 U.S. 83 (1963), because the evidence was obviously exculpatory in nature and should have thus been turned over to the defense in response to discovery.

The petition for writ of error coram nobis also alleges that a juror from the 1969 trial contacted current counsel for the petitioner. That juror apparently claimed that the jury watched television newscasts in the evenings during the course of the trial, and that it was suggested, during these newscasts, that, among other things, the petitioner fired a .22 caliber pistol during the robbery and that she had previously been charged with the murder of a taxi driver in DeSoto County, Mississippi. Further, the petition alleged that a bailiff brought daily newspapers into the jury area and that the jurors read these newspapers during the course of the trial.

In response to the allegations in the petition for writ of error coram nobis, the State filed a motion to dismiss based on the one-year statute of limitations for coram nobis relief contained in Tennessee Code Annotated section 27-7-103. The trial court held a hearing on the motion to dismiss, at which the trial court heard argument from counsel for both the petitioner and the State. The trial court granted the motion to dismiss, determining that the petitioner failed to file her petition within the one-year statute of limitations and failed to demonstrate that due process required the tolling of the statute of limitations. This appeal followed.

Analysis

On appeal, the petitioner challenges the trial court's dismissal of the petition. Specifically, she argues that: (1) the trial court improperly dismissed the petition without a hearing; (2) the trial court erroneously found that the petitioner was at fault in failing to present at the proper time the issue of Mr. Box's statement containing Nash's statement that he was the only shooter; (3) the trial court incorrectly determined that Mr. Nash's confession as the sole shooter was not new evidence of innocence; and (4) the trial court erroneously dismissed the constitutional violations asserted in the petition. The State counters that "the law does not support the petitioner's claims" and coram nobis relief is not appropriate for the constitutional violations alleged by the petitioner.

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. That statute provides, in pertinent part:

> [t]he relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such

-4-

evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

The writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999). The "purpose of this remedy 'is to bring to the attention of the court some fact unknown to the court which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 165, 167 (Tenn. 1996)). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988), overruled on other grounds by Mixon, 983 S.W.2d at 671 n.3.

A petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. Hart, 911 S.W.2d at 374-75.

A petition for writ of error coram nobis must usually be filed within one year after the judgment becomes final. See Tenn. Code Ann. § 27-7-103; State v. Mixon, 983 S.W.2d 661, 670 (Tenn. 1999). It has been determined that a judgment becomes final, for purposes of coram nobis relief, thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. Mixon, 983 S.W.2d at 670. The parties do not dispute that the petition for writ of error coram nobis in the case herein was filed outside of the applicable statute of limitations.

The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing. The coram nobis statute also does not contain provisions for summary disposition or expedited appeals. . . . Although coram nobis claims also are governed by a one-year statute of limitations, the State bears the burden of raising the bar of the statute of limitations as an affirmative defense. See Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995).

Harris v. State, 102 S.W.3d 587, 592-93 (Tenn. 2003).

In the case herein, the trial court summarily dismissed the petition on the basis that it was filed outside the statute of limitations. Despite not having a hearing in which evidence was presented, the trial court also determined that the petition did not satisfy the requirements of Hart. 911 S.W.2d at 374-75. Specifically, the trial court opined that

> there is no question that the petitioner's motion, filed approximately thirty-two years after the judgment was final in the trial court, was clearly outside the statute of limitations. However, the defendant contends that due process requires that the statute of limitations for filing her Petition for Writ of Error Coram Nobis be tolled. This court finds no due process concerns which would entitle petitioner to relief.
> . . . .
> Moreover, this court finds that coram nobis is not the appropriate avenue to address the alleged constitutional violations relating to juror misconduct. . . . .
>
> Having found that the defendant has failed to file within the applicable statute of limitations and having further found that the defendant has failed to demonstrate that her interest in presenting her claims is outweighed by the government's interest in preventing litigation of stale claims, it is not necessary for this court to further examine the merits of the petitioner's allegations. However, this court notes that [the] petition seems to be fundamentally flawed under the standards set forth by Hart. Initially, it is unclear whether or not the statement of Nash allegedly made to Box were unknown to the defense during the original trial. . . .
>
> Hart also requires the petitioner to demonstrate that she was without fault in failing to present the claims. This court finds it unlikely that it was the intention of our Supreme Court to reward defendants, who due to their own criminal actions, fail to present timely claims, by providing them with relief under a writ of error coram nobis . . . .
>
> Finally, under Hart, the defendant must demonstrate that a different judgment "may have resulted" if the new evidence were presented to the jury. As noted, given the fact that the alleged testimony, even if accepted by the jury, would not change the culpability of the defendant, it is unlikely that the defendant could demonstrate a "reasonable probability" that a different judgment would have resulted based upon the new evidence.

As we begin our analysis, we must initially determine if the claims advanced by the petitioner are appropriately addressed by coram nobis relief. The State argues that the petitioner's allegations of violations of Brady v. Maryland and juror misconduct are not appropriately addressed in a coram nobis proceeding. Specifically, citing Kinnaird v. State, No. M2000-00037-CCA-R3-PC, 2001 WL 881371 (Tenn. Crim. App. at Nashville, Aug. 7, 2001), the State argues that "a petition for writ of error coram nobis is not the appropriate remedy by which to seek relief from constitutional errors such as that asserted under Brady v. Maryland."

In Kinnaird, a post-conviction proceeding, this Court evaluated a claim in which the defendant alleged that the State violated his constitutional rights under Brady by withholding various pieces of exculpatory evidence. 2001 WL 881371, at *1. The defendant had raised issues with respect to the withheld evidence in a motion for new trial and, subsequently, in a petition for writ of error coram nobis. The trial court denied the motion for new trial and this Court, in State v. Hershell Kinnaird, No. 01C01-9404-CC-00149, 1995 WL 382612, at *1 (Tenn. Crim. App. at Nashville, June 28, 1995), found that the issue of the Brady violations had been previously raised in the motion for new trial and that relief under the coram nobis statute was therefore not available. The defendant raised these issues for the third time in his petition for post-conviction relief. On appeal from the denial of post-conviction relief, this Court commented

> [d]espite his prior unsuccessful attempt to obtain relief on this issue, the Defendant again complained about the State's failure to disclose . . . [the exculpatory evidence]. The coram nobis court properly found that this issue had been previously raised in the motion for new trial and that relief under the coram nobis statute was therefore not available . . . . On appeal from the coram nobis court's ruling, this Court also rejected the Defendant's Brady claim on this issue, holding that "[c]oram nobis is not a forum for the determination of a constitutional issue."

Kinnaird, 2001 WL 881371, at *5.


We agree that this Court determined in Kinnaird's case that "coram nobis is not a forum for the determination of a constitutional issue." However, according to the statute, coram nobis relief is appropriate for "matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on a writ of error, or in a habeas corpus proceeding." Tenn. Code Ann. § 40-26-105; Kinnaird, 2001 WL 881371, at *5. In Kinnaird, the defendant had raised the issue of the withheld evidence in both a motion for new trial and a corum nobis proceeding and the trial court had made "specific findings with respect to the . . . [exculpatory evidence] and ruled that the State's withholding of the statement did not justify a new trial under Brady." 2001 WL 881371, at *5. Moreover, we also note that Kinnaird was decided several months after the supreme court's decision in Workman, yet the Kinnaird opinion does not reference or cite Workman even though Workman dealt with a similar issue - a coram nobis proceeding predicated on evidence that was unavailable at the time of the defendant's trial due to alleged suppression by the State. See Kinnaird, 2001 WL 881371, at *1-*4. We feel this seriously calls into question the Kinnaird's panel reliance on the earlier Kinnaird decision that determined Brady violations are not appropriate for coram nobis relief. See Kinnaird, 2001 WL 881371, at *6 (relying on Kinnaird, 1995 WL 382612, at *4, to conclude that allegations of Brady violations are not appropriate in a coram nobis proceeding).

In the case herein, the petitioner's allegations of the newly discovered evidence in the context of violations of Brady v. Maryland, were not, and could not have been, litigated previously. Despite the petitioner's discovery request for statements of Mr. Box prior to trial, the existence of the

-7-

evidence was not discovered until September of 2002 when current counsel for the petitioner and one of the original prosecutors reviewed the District Attorney's case file from the original trial. Further, at least one reported case from this Court, State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002), discusses coram nobis relief in the context of suppressed exculpatory evidence that also might amount to new evidence of innocence.

The allegations of juror misconduct, on the other hand, could have been discovered by the petitioner and raised in a post-conviction petition. Therefore, we determine that the allegations of juror misconduct do not amount to new evidence of innocence which would have resulted in a different judgment had it been presented at trial. See Tenn. Code Ann. § 40-26-105; see also State v. Doyle Hart, No. 02C01-9612-CC-00451, 1997 WL 56313, at *6 (Tenn. Crim. App. at Jackson, Sept. 10, 1997); Kenneth C. Stomm v. State, No. 03C01-9110-CR-00342, 1992 WL 97081, at *1 (Tenn. Crim. App. at Knoxville, May 12, 1992) (stating that "[t]he [coram nobis] proceeding is confined to errors outside the record and to matters which were not and could not have been litigated at trial, the motion for new trial, appeal, or upon post-conviction petition."); State v. James D. "Sonny" Yarbrough, No. 01C01-9001-CC-00012, 1990 WL 109107, at *2 (Tenn. Crim. App. at Nashville, Aug. 3, 1990) (noting that the remedy of error coram nobis is also not available on matters that were or could have been litigated in a post-conviction proceeding). Thus, regardless of our decision as to the remainder of the allegations, the petitioner's claim of juror misconduct is waived by failing to assert it in a timely petition for post-conviction relief. See Tenn. Code Ann. § 40-35-102.

Because we have determined that the petitioner's allegations of newly discovered evidence are appropriately addressed in a petition for writ of error coram nobis, the next step in our analysis is to determine whether the statute of limitations should be tolled in the case herein. In Workman v. State, 41 S.W.3d 100 (Tenn. 2001), a case relied heavily upon by the petitioner, the Tennessee Supreme Court reviewed a case in which the petitioner was denied a hearing on his petition for writ of error coram nobis because the statute of limitations for filing had passed. Similar to the case herein, Workman sought coram nobis relief based on claims that new evidence, unavailable during his trial, would show that he was actually innocent of capital murder.

In Workman, the supreme court found that, in a variety of contexts, due process may require tolling of an applicable statute of limitations. Id. at 103. The Workman court relied, in part, on the due process considerations discussed in Burford v. State, 845 S.W.2d 204 (Tenn. 1992). Workman, 41 S.W.3d at 102. Specifically, the Burford court recognized that "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner" and that, "under the circumstances of a particular case, application of the statute may not afford a reasonable opportunity to have the claimed issue heard and decided." Id. (quoting Burford, 845 S.W.2d at 208).

In determining what sort of opportunity is "reasonable," the court concluded that "[i]dentification of the precise dictates of due process requires consideration of both the

governmental interests involved and the private interests affected by the official action. . . ." Workman, 41 S.W.3d at 102. In Burford, the private interest at stake was the accused's opportunity to attack his conviction and incarceration on the grounds that he was deprived of a constitutional right via a post-conviction petition; the governmental interest represented by the statute of limitations was the prevention of stale and groundless claims. Id. The court in Burford determined, after weighing the competing interests in that case, that the accused's interest in mounting a constitutional attack upon his conviction and incarceration outweighed the State's interest in preventing the litigation of stale and groundless claims.

Using that same analysis, the court in Workman weighed the governmental interests involved against the private interests affected by the official action and decided that, if the procedural time bar was applied, Workman could have been put to death without receiving an opportunity to have the merits of his claim evaluated by a court of this state. Id. at 103. In other words, the court determined that due process precludes application of the statute of limitations to bar consideration of a petition for writ of error coram nobis in cases where the defendant's interest in obtaining a hearing to present newly discovered evidence, which may establish actual innocence, far outweighs any governmental interest in preventing the litigation of stale claims. Id. The supreme court concluded that Workman was entitled to a hearing to evaluate the claims contained in his petition for writ of error coram nobis, notwithstanding the fact that he filed his petition thirteen months after discovering the newly discovered evidence. Id. In considering the delay, the court remarked that the time within which Workman's petition was filed did not exceed the reasonable opportunity afforded by due process, especially in cases such as Workman's where the evidence in issue may show actual innocence of a capital offense. Id. at 103-104.

Contrary to Workman, the petitioner's case does not involve a capital offense. Yet a sentence of ninety-nine years' incarceration is in our opinion a sufficiently significant period of time to warrant similar treatment for purposes of due process analysis. Moreover, this Court has applied the doctrine set forth in Workman to non-capital cases. See State v. Ratliff, 71 S.W.3d 291, 296-97 (Tenn. Crim. App. 2001).

Returning to the due process issue, we observe that the petitioner, similarly to the defendant in Workman, has raised serious questions regarding whether she, in fact, murdered Hillman Robbins, Sr. The petition alleges that counsel for the defendant was not provided with, and did not know of, the portion of the statement made by Mr. Box which contained Mr. Nash's admission that he was the sole shooter. Had that confession been available to her counsel at the time of trial, the petitioner argues, the confession would have corroborated her testimony that she knew nothing of Mr. Nash's plan to rob and murder Mr. Robbins. The statements were obviously exculpatory in nature as they corroborated the testimony of the petitioner.

The State argues that the petitioner did not "avail herself" of the system and is thus precluded from now gaining the benefit of the late discovery of the evidence. The State claims that "the petitioner cannot show that it was not her fault in failing to bring the claim any time over the past 33 years . . . the only explanation that the claims were not brought until February 2003 is that the

petitioner was at fault" because she was a fugitive, the petitioner had not discovered the suppression of the statements of Mr. Box by the conclusion of her trial and direct appeal, and did not discover the evidence until the time for filing a petition for writ of error coram nobis had already expired. We disagree. The delay in obtaining the evidence is not attributable to the fault of the petitioner or her attorneys. Despite the fact that the petitioner escaped from prison and remained at large for over thirty years, the petitioner's trial counsel specifically requested the written statement of "any informer once held in the DeSoto County [Mississippi] Jail" as part of a discovery request. That information was not provided to the petitioner at trial. The fact that the petitioner escaped from jail and remained a fugitive for many years does not change the fact that the evidence was withheld by the State. Even if the petitioner had not escaped we have no reason to believe this evidence would have been disclosed voluntarily. Indeed, if the State's position in this appeal were to prevail, criminal defendants, in order to protect their rights to file a coram nobis petition, would be required in every case to examine every prosecution file following their convictions in order to determine whether exculpatory evidence was withheld. We cannot believe this is something the State really wants. "[T]he State's finality interest is seriously compromised when the prosecution has suppressed evidence in violation of its constitutional duty and is directly responsible for causing the delay in finality." Harris v. State, 102 S.W.3d 587, 602 (Tenn. 2003) (Anderson, J. dissenting) (citing Sample v. State, 82 S.W.3d 267, 276 (Tenn. 2002)).

Accordingly, we determine that due process precludes summary dismissal of this claim based upon a statutory time bar, and that the petitioner herein is entitled to a hearing to evaluate the claims contained in her petition for writ of error coram nobis relating to the newly discovered evidence. No court in this State has actually held a hearing to evaluate the strength of the claims asserted in the petition. The petitioner is entitled to a "reasonable opportunity after the expiration of the limitations period to present [her] claim in a meaningful time and manner." Williams v. State, 44 S.W.3d 464, 471 (Tenn. 2001).

## Conclusion

Accordingly, we conclude that the decision of the trial court dismissing the portion of the writ of error coram nobis alleging the discovery of new evidence should be reversed and the case remanded for a hearing. At the hearing, the petitioner will have the opportunity to establish that there is a "reasonable probability" that the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial. See Tenn. Code Ann. § 40-26-105; Workman, 111 S.W.3d at 18. If she makes this showing, and if she also establishes that she "was without fault" in failing to present the newly discovered evidence at the appropriate time, she will be entitled to a new trial. Id.; see also Workman, 41 S.W.3d at 104; Mixon 983 S.W.2d at 673. Further, we affirm the portion of the trial court's decision dismissing the portion of the petition relating to the allegations of juror misconduct as those allegations should have been brought in a post-conviction proceeding. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE