IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2014

## DEXTER FRANK JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 290380     Barry A. Steelman, Judge**

---

**No. E2014-00659-CCA-R3-ECN - Filed December 23, 2014**

---

Pro se Petitioner, Dexter Frank Johnson, appeals the summary dismissal of his third motion seeking to reopen his post-conviction proceedings and/or the denial of a writ of coram nobis by the Criminal Court of Hamilton County.[1] He further claims that the post-conviction court erred by failing to appoint counsel to assist him with his petition because he is illiterate. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and DAVID A. PATTERSON, SP. J., joined.

Dexter Frank Johnson, Clifton, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William H. Cox, III, District Attorney General; and Dave Denny, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On February 11, 1994, and pursuant to a plea agreement, the Petitioner entered guilty pleas to two counts of first degree murder, one count of attempted first degree murder, and one count of attempted aggravated burglary. In exchange for his guilty plea, the Petitioner received a sentence of life for the two first degree murder convictions, twenty-five years for the attempted first degree murder conviction, six years for the attempted aggravated burglary

---

[1] The transcripts from the guilty plea colloquy and the post-conviction hearing as well as the Petitioner's affidavit in support of his motion for appointed counsel reference the fact that the Petitioner is unable to read and write.

conviction, and dismissal of "all remaining charges against [the Petitioner] based on episodes that [he] was involved in contemporaneous" to the instant offenses.[2] All of these sentences were ordered to be served concurrently. The factual basis supporting the Petitioner's guilty pleas provided, in pertinent part, the following:

> [O]n March 18[th] [the Petitioner] in the company of at least two other individuals traveled to a location on Glass Street in Chattanooga. The parties visited a market which was adjacent to a liquor store and then quickly came back to the liquor store. . . . [The Petitioner] entered the liquor store, known as Sandy's Liquor Store, that he approached the counter, and there encountered Donald Sirhan. There was some sort of altercation at that scene, the result of which was that [the Petitioner] fired a shot and this shot had entered the left shoulder - - arm of Donald Sirhan. . . . As Donald Sirhan had attempted to run back through the storage counter area . . . [the Petitioner] proceeded after Mr. Sirhan . . . but was unable to locate him immediately.
>
> . . . .
>
> The other party present was Sandy Sirhan, the sister of the decedent, the victim in this case. She was also present in the back stock room and she also started to flee upon hearing the shot and hearing a warning given by the decedent, Donald Sirhan. [The Petitioner] was able to track Sandy Sirhan around the side of this Lookout Beverage truck and she fell to the ground. While on the ground [the Petitioner] using a .38 caliber weapon fired one time and shot Sandy Sirhan in the abdomen area. Donald Sirhan hearing this shot and hearing his sister had doubled back from his apparent escape . . . . It was sometime around this point [the Petitioner] was able to point a .38 at him . . . and [the Petitioner] [fatally] shot Donald Sirhan one time in the back.
>
> . . . .
>
> Sandy Sirhan did not realize under the stress of the event that she had been shot until some 10 to 12 minutes later. And that is the basis for the attempt first degree murder case to which [the Petitioner] is pleading guilty[.]
>
> . . . .

---

[2] The remaining charges were not specified at the guilty plea hearing.

[In regard to the other first degree murder,] [t]here was some animosity between [the Petitioner and Ray Crawford, the victim,] and the killing of Ray Crawford occurred on May 10, 1992. This offense occurring roughly two months after the Sirhan killing and the shooting of Sandy Sirhan. This killing was also committed with a .38 and this was a killing that was committed when [the Petitioner] leveled the .38 at the head of Ray Crawford at point-blank range and fired, killing him. The wound was instantly fatal. . . . the reason [the Petitioner] killed Ray Crawford was to silence him because . . . , Ray Crawford, had threatened to go to the grand jury with information about the Sandy's Liquor Store shooting and the killing of Donald Sirhan.

. . . .

The proof in the [Ray Crawford case] would have been buttressed by, as well as the Sirhan case, it would have been buttressed by some recordings that were made in the Hamilton County jail after [the Petitioner] was incarcerated. The State's prosecution of this case was greatly facilitated by [the Petitioner's] own statements to other inmates. Other inmates had come forward and mentioned this to law enforcement authorities without any solicitation on the part of the State. Statements were taken from at least two inmates as to the killings involved. [The Petitioner] was already under arrest and in custody for the killing of Ray Crawford at the time these statements were made. And based upon that fact the State's concerned that there might be Sixth Amendment violations in attempting to question [the Petitioner], who had already invoked and had counsel in that killing of Ray Crawford, it was decided that we would do some recordings and try to get information about the killing of Donald Sirhan because [the Petitioner] was not under arrest for that case. The recordings . . . were very damaging to [the Petitioner]. [The Petitioner] made devastating admissions about his involvement in these killings. That is how the State knows the theory by which he did indeed kill Ray Crawford.

. . . .

[The attempted aggravated robbery case] involved an entirely separate episode where [the Petitioner] had called for a pizza and asked that it be delivered. . . . Dale Holt was a Pizza Hut delivery man who responded to the call with the pizza. [The Petitioner] never intended to pay for this pizza as he informed Mr. Holt when Mr. Holt emerged from the car . . . [the Petitioner] again leveled a .38 in the face of Mr. Holt and informed him that he would have the pizza for

free.  Mr. Holt attempted to turn and run. [The Petitioner] did fire once in his direction with the bullet entering [Mr. Holt's] car[.]

In November 1994, the Petitioner filed a petition for post-conviction relief, asserting that his guilty pleas were not knowingly and voluntarily entered.  Specifically, the Petitioner alleged that there was no factual basis for his guilty pleas, that he was mentally incompetent, and that the trial court failed to comply with Boykin v. Alabama, 395 U.S. 238 (1969).  This court affirmed the trial court's denial of post-conviction relief.  Dexter Johnson v. State, No. 03C01-9503-CR-00088 (Tenn. Crim. App. Feb. 6, 1996), perm. app. denied (Tenn. Nov. 9, 1998).  The Petitioner subsequently filed two motions to reopen his post-conviction proceedings in 2001 and 2010, both of which were denied.  See Dexter Johnson v. State, No. E2010-01038-CCA-R3-PC, 2010 WL 4296604, at *2 (Tenn. Crim. App. Oct. 28, 2010) (claiming that his life sentences were illegal and failed to comply with the requirements of the 1989 Sentencing Reform Act).

The Petitioner also filed five unsuccessful petitions for habeas corpus relief claiming ineffective assistance of counsel and challenging the voluntary nature of his guilty pleas.  See Dexter F. Johnson v. State, No. M2013-00965-CCA-R3-HC, 2013 WL 6164081 (Tenn. Crim. App. Nov. 21, 2013), perm. app. denied (Mar. 5,  2014) (claiming that his judgments were void because his guilty plea "constituted an ex post facto violation" and that the State failed to comply with Tennessee Code Annotated section 29-21-116); Dexter F. Johnson v. Carlton, Warden, E2008-02032-CCA-R3-HC, 2010 WL 323126 (Tenn. Crim. App. Jan. 27, 2010), perm. app. denied (Tenn. June 30, 2010) (alleging that his sentences were void because the trial court failed to state on the record the enhancement and mitigating factors and that his judgment forms did not properly reflect concurrent or consecutive sentencing); Dexter Frank Johnson v. Tony Parker, Warden, No. E2006-00313-CCA-R3-HC, 2007 WL 1259205 (Tenn. Crim. App. Apr. 30, 2007), perm. app. denied (Tenn. Aug. 13, 2007) (claiming that his guilty pleas "resulted from the induced threats of death penalty" and that the trial court failed to advise him of his "constitutional rights"); Dexter Frank Johnson v. State, No. E2004-01260-CCA-R3-HC, 2004 WL 1945744 (Tenn. Crim. App. Sept. 2, 2004), perm. app. denied (Tenn. Dec. 20, 2004) (claiming trial counsel conspired with the prosecutor by having another defendant wear a wiretap in an effort to obtain evidence regarding charges to which the petitioner ultimately pled guilty); Dexter Johnson v. State, No. 03C01-9707-CR-00241, 1999 WL 41837 (Tenn. Crim. App. Feb. 2, 1999), perm. app. denied (Tenn. Jun. 14, 1999) (claiming trial counsel failed to properly investigate his charges and that at the time of the offense "he was on 'powerful tranquilizers . . . that . . . made him paranoid'").

On January 2, 2014, the Petitioner filed the instant motion for post-conviction relief and/or writ of error coram nobis along with a motion for appointment of counsel.  In effect,

the Petitioner claimed that "because the courts failed to inform him of the conflict of interest, they denied him the right to due process." The Petitioner attached the following to his motion: (1) a copy of the transcript from the guilty plea hearing, listing Paul Bergman, counsel for the Petitioner, as an "Assistant Public Defender"; (2) a copy of the transcript from the post-conviction hearing; (3) medical records dated 1992, 1993, 1994; (4) an October 29, 2004 letter from Attorney Hank Hill in response to a Board of Professional Responsibility inquiry, which notes that Hill did not represent the Petitioner and that Hill's sole involvement in the Petitioner's case was signing the "motion to withdraw on behalf of the Public Defender's Office, based on the fact that the Public Defender's Office had represented other defendants who were prepared to testify against the [Petitioner] based on electronically monitored conversations between those defendants and [the Petitioner]"; (5) a motion to withdraw from representing the Petitioner filed by the Public Defender's Office on January 13, 1993; and (6) copies of the judgments of conviction in the instant case, designating Paul Bergman, counsel for the Petitioner, as appointed counsel. On March 14, 2014, the post-conviction court summarily denied relief and provided its reasoning in a six-page, detailed written order. It is from this order that the Petitioner now appeals.

## ANALYSIS

As we understand the Petitioner's claim, he argues that his 1994 guilty pleas were not entered knowingly and voluntarily because his counsel at the time, Paul Bergman, had "an actual conflict of interest." He specifically contends that Paul Bergman worked for the District Public Defender's Office at the time of the guilty pleas, and that the District Public Defender's Office simultaneously represented other inmates who recorded inculpatory conversations with the Petitioner while incarcerated. The State contends that the post-conviction court properly denied relief. We agree with the State.

At the time of the Petitioner's guilty pleas, the Post-Conviction Procedure Act provided that a prisoner in custody under sentence of a court of Tennessee was required petition for post-conviction relief within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred. T. C. A. §40-30-102 (repealed 1995).[3] The new Act, which governs all

---

[3] Because the Petitioner's three-year statute of limitations under the old act had not expired on May 10, 1995, the effective date of the new act, the Petitioner's right to petition for post-conviction relief continued under the new act. See Carter v. State, 952 S.W.2d 417, 419-20 (Tenn.1997). However, the Compiler's Notes to Tennessee Code Annotated section 40-30-201 state that under the new act a petitioner must file his petition for post-conviction relief or motion to reopen a petition within one year of the effective date of the new act. All subsequent filings for post-conviction relief will be governed by the new Act. See Compiler's Notes to T.C.A. § 40-30-201 (Supp. 1995).

filings after May 10, 1996, further provided that "[i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment." Moreover, "[i]f a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed." T.C.A. § 40-30-102(c). In order to determine whether the Petitioner is entitled to reopen his petition for post-conviction relief, the Petitioner must make a claim falling within the three narrow exceptions outlined in Tennessee Code Annotated section 40-30-117(a):

> (1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or
>
> (2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
>
> (3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and
>
> (4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

T.C.A. § 40-30-117(a) (2011).

Upon the post-conviction court's denial of a motion to reopen a petition for post-conviction relief, Tennessee Code Annotated section 40-30-117(c) requires the petitioner to file an application with this court for permission to appeal within ten days of the post-conviction court's order. This statute makes an appeal from the post-conviction court's denial of a motion to reopen a petition for post-conviction relief discretionary and not as of right. Accordingly, a petitioner's attempt to appeal the denial of his motion through the filing of a Rule 3 notice of appeal is improper and dismissible on this ground alone. See Dexter

Johnson v. State, No. E2010-01038-CCA-R3-PC, 2010 WL 4296604, at *2 (Tenn. Crim. App. Oct. 28, 2010).

To the extent that the Petitioner additionally claims he is entitled to coram nobis relief, we are guided by the following legal framework. A writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)); State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). The Tennessee Supreme Court has distinguished a motion to reopen a post-conviction petition from a petition for writ of error coram nobis:

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing.

Harris v. State, 102 S.W.3d 587, 592-93 (Tenn. 2003). The governing statute for coram nobis relief is Tennessee Code Annotated section 40-26-105, which provides, in pertinent part:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T. C. A. § 40-26-105(b), (c) (2011). A guilty plea is considered a trial for purposes of the coram nobis statute. See Wlodarz v. State, 361 S.W.3d 490, 504 (Tenn. 2012). Relief may be available if the newly discovered evidence calls into question the knowing and voluntary nature of the guilty plea. Id. at 501 (citing Newsome v. State, 995 S.W.2d 129, 134 (Tenn. Crim. App. 1998)). A petition for writ of error coram nobis must contain the following: "(1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the

-7-

newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner." Freshwater v. State, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004) (citing State v. Hart, 911 S.W.2d 371, 374-75 (Tenn. Crim. App.1995)). We note that "[t]he decision to grant or deny a petition for the writ of error coram nobis on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court." Hart, 911 S.W.2d at 375 (citations omitted).

The statute of limitations for a petition for writ of error coram nobis is one year from the date the judgment becomes final in the trial court. T. C. A. § 27-7-103 (Supp. 2009); Mixon, 983 S.W.2d at 671. For the purposes of a petition for writ of error coram nobis, a judgment becomes final thirty days after the entry of the trial court's judgment if no post-trial motions are filed or upon entry of an order disposing of a timely post-trial motion. Mixon, 983 S.W.2d at 670 (citing Tenn. R. App. P. 4(c); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996)). Due process considerations may toll the one-year statute of limitations when a petitioner seeks a writ of error coram nobis. Harris v. State, 301 S.W.3d 141, 145 (Tenn. 2010). "[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992). To determine if due process requires the tolling of the statute of limitations the court should consider: (1) when the limitations period would normally have begun to run; (2) whether the grounds for relief arose after the limitations period normally would have commenced; and (3) if the grounds are later-arising, would a strict application of the limitations period deny the petitioner a reasonable opportunity to present the claim. State v. Sands, 903 S.W.2d 297, 301 (Tenn. 1995).

In its order denying relief, the post-conviction court determined that the Public Defender's Office withdrew from representing the Petitioner in the Ray Crawford case and case numbers 193694-70, on January 14, 1993, prior to the indictments in the Donald Sirhan and Sandy Sirhan cases on March 31, 1993.[4] The court noted that Paul Bergman was appointed to represent the Petitioner in the Ray Crawford case on February 1, 1993, and later appointed to represent the Petitioner in the Sirhan cases on April 1, 1993. The court further found that Paul Bergman was not an assistant public defender. In so finding, the court relied on an attorney fee claim for services rendered on the Petitioner's case filed by Mr. Bergman on March 17, 1993, which was later approved by the court. The court reasoned that the

_____

[4] Evidently, the post-conviction court reviewed the technical record or what is commonly referred to as "the jacket" from the original cases. This information is not included in the record on appeal.

Petitioner was not entitled to error coram nobis relief because the petition did not "allege the discovery of new, admissible-at-trial evidence of actual innocence, only the existence of new irrelevant-at-trial-and-therefore-inadmissible-at-trial evidence of an actual conflict of interest on counsel's part." It summarily dismissed the petition for post-conviction relief because it was untimely and no exception existed to re-open the petition.

As in his prior appeal of the denial of a motion to re-open his petition for post-conviction relief, the Petitioner has failed to seek permission from this court in order to appeal. On this ground alone, this court may dismiss his appeal. Nevertheless, we agree with the post-conviction court and conclude that his petition for post-conviction relief is neither timely nor satisfies any of the exceptions under Tennessee Code Annotated section 40-30-117(a). Accordingly, summary dismissal of the Petitioner's third motion to reopen his post-conviction petition was proper.

Alternatively, the Petitioner claims that he is entitled to error coram nobis relief because his counsel was a member of the Public Defender's Office, which was simultaneously representing other inmates who were potential State's witnesses at the time of his guilty plea. As in his petition to reopen post-conviction proceedings, his motion for error coram nobis relief is also untimely. It should have been filed nearly 19 years ago. Moreover, the record does not show that the "actual conflict of interest" alleged by the Petitioner constitutes newly discovered evidence that may have resulted in a different judgment or that the Petitioner was not at fault for not presenting it sooner. The Public Defender's Office withdrew from representing the Petitioner on the Crawford murder and other pending cases three months before the Petitioner was indicted for the murder and attempted murder of the Sirhans and a year before he pleaded guilty in all cases. The Petitioner was well aware of the withdrawal and the later appointment by the court of Mr. Bergman. Even if the Petitioner was unaware of the reason for the Public Defender's Office's withdrawal, and we assume that the alleged "actual conflict of interest" was later arising based on the 2004 Hank Hill letter, the Petitioner fails to explain why he did not present this issue until 10 years later. The Petitioner did in fact file a petition for habeas relief on similar grounds in 2004. However, this court instructed the Petitioner that the "authorized avenue for attacking a voidable judgment is a petition for post-conviction relief," see Dexter Johnson v. State, 2004 WL 1945744, at *2, and we recognized that the Petitioner had previously exercised his right to seek post-conviction relief. In any event, the post-conviction court noted its belief that the notation of Paul Bergman as a member of the Public Defender's Office on the guilty plea transcript was a clerical error. Based on Mr. Bergman's fee claim for the work performed on the Petitioner's case as well as the judgments of

conviction designating Mr. Bergman as court-appointed counsel, we agree.[5]  We are unable to conclude that a strict application of the statute of limitation would result in a denial of due process.  Accordingly, the Petitioner is not entitled to relief.

## <u>CONCLUSION</u>

Based on the foregoing authority and analysis, we affirm the post-conviction court's summary dismissal of the Petitioner's motion.

_____
CAMILLE R. McMULLEN, JUDGE

---

[5] Rule 13 of the Supreme Court Rules generally provides that appointed counsel, other than public defenders, shall be entitled to reasonable compensation for services rendered.

-10-