# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 2, 2014

## JAMES CLARK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. 91-07308–91-07314     James M. Lammey, Jr., Judge**

_____

**No. W2014-00514-CCA-R3-ECN  - Filed January 14, 2015**

_____

The Petitioner, James Clark, appeals as of right from the Shelby County Criminal Court's dismissal of his petition for writ of error coram nobis. The Petitioner contends that the trial court erred by summarily dismissing his petition for procedural defects and for failing to state a cognizable claim. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, James Clark.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Glen C. Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

Around 11:30 a.m. on April 23, 1991, the Petitioner and his co-defendant, Ronald Honaker, arrived at a pawn shop in Memphis, Tennessee. State v. James Clark, No. 02C01-9206-CR-00149, 1993 WL 414015, at *1 (Tenn. Crim. App. Oct. 20, 1993), perm. app. denied, (Tenn. May 16, 1994). Honaker entered the pawn shop and "indicated that he had numerous items to sell." Id. Honaker took one of the pawn shop employees outside to look at "several television sets, Nintendo games, baseball gloves, and other items jumbled together under a rug" in the back of a black pickup truck. Id. The employee noticed that the

Petitioner was "sitting behind the steering wheel of the truck." Id. It was determined at trial that the items and the truck had been stolen from three separate homes earlier that morning.

The Petitioner and Honaker haggled with the employee "regarding the price of the items in the truck." Clark, 1993 WL 414015, at *1. The employee then went back inside the pawn shop and spoke to the manager. The manager went outside and spoke to Honaker and the Petitioner about the price of the items while the employee called the police. "While waiting for the police, the manager had [Honaker and the Petitioner] carry the items into the pawn shop where he tested them to see if they were operable." Id. Once the police arrived, Honaker and the Petitioner were taken into custody, handcuffed, and placed in the back of a patrol car. The victims of the burglaries were brought to the pawn shop and identified the stolen items. Id.

After the victims had identified their property, two police officers entered the patrol car and drove away with Honaker and the Petitioner in the backseat. Clark, 1993 WL 414015, at *1. The Petitioner was able to free one of his hands and recovered a pistol that "Honaker later admitted he had taken from one of the burglary victims" and had given to the Petitioner at the pawn shop. Id. The Petitioner then shot both officers in the back of their heads. Id. at *2. The Petitioner got in the driver's seat of the patrol car, took a revolver from one of the wounded officers, and drove away with Honaker in the backseat. The Petitioner and Honaker "were apprehended a short time later . . . hiding [] under a roll of carpet beneath a viaduct." Id. When arrested, the Petitioner had the stolen pistol in his back pocket and "spontaneously confessed . . . that he shot the officers to avoid going back to prison." Id.

The Petitioner was convicted of two counts of attempted first degree murder, two counts of aggravated burglary, two counts of especially aggravated robbery, and three counts of theft. Clark, 1993 WL 414015, at *1. The Petitioner received a total effective sentence of 127 years. Honaker was convicted of two counts of attempted second degree murder, two counts of aggravated burglary, two counts of especially aggravated robbery, and three counts of theft. Honaker received a total effective sentence of forty years. Id. This court affirmed the Petitioner's convictions and sentences on direct appeal. Id.

The opinion notes that the evidence regarding the Petitioner's role in the burglaries and thefts was "largely circumstantial." Clark, 1993 WL 414015, at *3. However, this court affirmed the Petitioner's convictions on those charges under a theory of criminal responsibility, stating as follows:

> . . . [The Petitioner] was observed sitting at the wheel of the stolen truck. He accompanied Honaker, whose statement confessing to the theft of the pistol was admitted into evidence, to the pawn shop, and participated actively in the

negotiation for the price of the goods. The victims identified the goods which Honaker and Clark attempted to sell as those stolen that morning. Moreover, [the Petitioner] admitted that he shot two police officers, robbed one officer of his weapon, and stole a police car to avoid going back to jail for the burglaries. There was sufficient evidence presented at trial for the jury to conclude that [the Petitioner] "knowingly, voluntarily, and with common intent" united with Ronald Honaker in the commission of the burglaries and thefts.

Id.

The Petitioner filed the instant petition for writ of error coram nobis on November 12, 2013, challenging only his convictions for aggravated burglary and theft. In the petition, the Petitioner alleges that in 1991, Honaker gave a statement to the police outlining the Petitioner's involvement in the burglaries and thefts. However, the Petitioner admits that this statement was not used at trial. The petition further alleges that Honaker subsequently "admitted to participating in the burglaries by himself" and that Honaker "is ready to exonerate" the Petitioner regarding the burglaries and thefts. The petition contained no details about Honaker's alleged confession, other than to state that Honaker was "now coming forward to say that [the Petitioner] did not commit the burglaries." No affidavits from the Petitioner, the Petitioner's attorney, or Honaker were attached to the petition. Additionally, there was no information in the petition about when Honaker made his alleged confession.

The trial court summarily dismissed the petition, stating that the Petitioner failed to attach an affidavit from Honaker to the petition. The trial court also stated that the petition failed to demonstrate that the alleged newly discovered evidence "would have resulted in a different judgment" because the Petitioner "was convicted at trial based on circumstantial evidence without the testimony of . . . Honaker or his statement implicating the Petitioner in the burglaries and thefts."

## ANALYSIS

The Petitioner contends that the trial court erred by summarily dismissing his petition for writ of error coram nobis. The Petitioner argues that, despite the trial court's ruling to the contrary, "a statement by Honaker would still stand as exonerating proof" because the Petitioner was convicted on circumstantial evidence alone "as to the burglaries and thefts." The State responds that the petition "fails to meet any of the requirements set out by statute" and that the alleged statement from Honaker "would not have changed the outcome of the [P]etitioner's case."

-3-

A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105; see also State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The purpose of a writ of error coram nobis is to bring to the court's attention a previously unknown fact that, had it been known, may have resulted in a different judgment. State v. Vasques, 221 S.W.3d 514, 526-27 (Tenn. 2007). The decision to grant or deny the writ rests within the discretion of the coram nobis court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." State v. Wilson, 367 S.W.3d 229, 235 (Tenn. 2012).

At the outset, we note that the trial court used the wrong standard in finding that the petition failed to demonstrate that the alleged newly discovered evidence "would have resulted in a different judgment." A writ of error coram nobis lies when the alleged newly discovered evidence "may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105 (emphasis added). Put another way, the statute requires the trial court to analyze "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." Vasques, 221 S.W.3d at 527. Despite the trial court's error, we affirm its summary dismissal on the basis of several procedural defects in the Petitioner's petition.

A petition for writ of error coram nobis must relate:

(1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner.

Freshwater v. State, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004). Additionally, "[a]ffidavits should be filed in support of the petition or at some point in time prior to the hearing." Hart, 911 S.W.2d at 375. Furthermore, when a petition is filed outside the one-year statute of limitations, as is the case here, the trial court must "determine whether the grounds for relief actually arose after the limitations period would normally have commenced" in analyzing whether due process requires tolling the statute of limitations. Harris v. State, 301 S.W.3d 141, 145 (Tenn. 2010).

The instant petition contains no actual statements from Honaker, and the Petitioner failed to produce an affidavit from Honaker supporting the allegations contained in the petition. Instead, the petition relies solely upon assertions from the Petitioner's counsel that Honaker had recently "admitted to participating in the burglaries by himself" and that Honaker was "ready to exonerate" the Petitioner regarding the burglaries and thefts. It is well established that "[a]llegations contained in pleadings and statements made by counsel during a hearing or [] trial are not evidence." State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990) (internal footnotes omitted); see also State v. Price, 46 S.W.3d 785, 812 (Tenn. Crim. App. 2000) (stating that "information contained in the parties' briefs is not a part of the appellate record"). Furthermore, the petition does not state when Honaker made the alleged statements, preventing the trial court from making the necessary determinations as to whether the Petitioner was without fault in failing to present the evidence at the appropriate time and whether due process requires tolling the statute of limitations.

The procedural defects in the petition notwithstanding, the Petitioner's allegations still do not present a cognizable claim for error coram nobis relief. The Petitioner was convicted on a theory of criminal responsibility for the burglaries and thefts.

A person is criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.

Tenn. Code Ann. § 39-11-402(2). Here, the Petitioner was found at a pawn shop behind the steering wheel of a stolen truck, loaded with other stolen items, a short time after the burglaries and thefts. The Petitioner, along with Honaker, then negotiated with the employees of the pawn shop over the price of the stolen items. Additionally, the Petitioner "admitted that he shot two police officers, robbed one officer of his weapon, and stole a police car to avoid going back to jail for the burglaries." Clark, 1993 WL 414015, at *3. As such, there was overwhelming evidence that the Petitioner, with at least the intent to benefit in the proceeds of the offenses, aided Honaker with respect to the burglaries and thefts. Therefore, a statement from Honaker, made twenty-three years after the fact, that the Petitioner did not participate in the burglaries and thefts fails to show that there may have been a different judgment if it had been presented at trial. Accordingly, we affirm the trial court's summary dismissal of the instant petition for writ of error coram nobis.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE