IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Brief October 29, 2014

**TIMOTHY L. JEFFERSON v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-D-1954     Cheryl Blackburn, Judge**

**No. M2014-00756-CCA-R3-ECN - Filed May 6, 2015**

The petitioner, Timothy L. Jefferson, appeals the summary dismissal of his petition for the writ of error coram nobis. He is currently serving a forty-year sentence in the Department of Correction as a result of his 2001 guilty plea to second degree murder. On appeal, the petitioner contends that the coram nobis court's dismissal was in error for multiple reasons, including that: (1) the court failed to give proper consideration to veracity of the newly discovered evidence; (2) the court reached the wrong conclusion as to whether the newly discovered evidence may have affected the result; (3) the petition was not time-barred because the statute of limitations was waived; and (4) the issue had not been previously litigated. Following review of the record, we affirm the dismissal of the petition.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
**Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROGER A. PAGE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Timothy L. Jefferson, Clifton, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Sophia Lee, Senior Counsel; Victor S. Johnson III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background and Procedural History

The facts underlying the petitioner's conviction, as recited by the error coram nobis court in a previous order, are as follows:

On the evening of December 25, 1999, at approximately 7:30 p.m., Flemings Market at 490 Davidson Street, Nashville, was robbed and the store clerk, Mr. Mohammad Rafeat, was shot and killed. Prior to this incident, the eyewitness who was using one of the pay telephones located at the front of the store to speak to his girlfriend observed a person who was described as "a stocky male black" at another of the pay telephones and who asked the eyewitness for money and then made a telephone call. The eyewitness did not observe the person leave, but a few minutes later observed a person dressed the same way and Mr. Rafeat engaged in what appeared to be a gun battle inside the store. The eyewitness discontinued the telephone conversation (his girlfriend later confirmed that she heard gunshots over the telephone) and observed Mr. Rafeat exit the store, firing back into the store, and running around to the side of the building holding his chest. The eyewitness, who cannot speak English, drove to his residence, returned to the store with a roommate who could speak English, discovered the condition of the store, and called 911. The eyewitness did not observe the perpetrator leave the scene. After leaving the store having multiple gunshot wounds, Mr. Rafeat proceeded to a house located behind the store at 910 South 5th Street, knocked on the front door asking for help, and then collapsed on the front porch. The residents there then summoned the police; when Mr. Rafeat was transported to Vanderbilt Hospital, he was pronounced dead on arrival.

Upon their investigation of the crime scene, Metro police investigators noted gunshots in the store's front door, the cash register either thrown or knocked down to the floor, change on the floor in the vicinity of the cash register and on both sides of the front door, containers of "Jungle Juice" drink on the floor and the counter, and crumpled dollar bills on the counter. All of this evidence was collected by Metro police. Investigators obtained the telephone numbers of the pay telephones at the store to determine if the perpetrator used them. The telephones were also dusted for fingerprints. Investigators also determined that the murder weapon was a .25 caliber handgun.

On January 10, 2000, investigators received the telephone information requested and determined that three (3) telephone calls had been placed from

the telephones at about the time of the incident that could not be accounted for. Investigators ultimately determined that one (1) call was placed to the Yellow Cab Company, and the other two (2) were made to Mr. Charles Jones, one (1) to his pager and one (1) to his home telephone. When interviewed, Mr. Jones advised investigators that he had received both the page and the call from the [petitioner] . . . . The [petitioner] had asked Mr. Jones if he would pick him up in front of the old Davidson County workhouse. However, when Mr. Jones arrived, the [petitioner] was not there. As determined from the telephone records, the page and the call were placed within minutes of the incident. Mr. Jones later identified the [petitioner's] residence as 1902 12th Avenue, North.

At the evidentiary hearing on [the petitioner's] motion [to suppress], Metro Police Detective E.J. Bernard testified that he and Detective Biltmore then preceeded to 1902 12th Ave, North, Nashville. The residence is owned by the [petitioner's] grandmother and legal guardian, Dorothy Timothy. Although the plain-clothes detectives arrived in one vehicle, because of the [petitioner's] prior juvenile record, approximately five (5) to six (6) additional officers later arrived for backup, according to Detective Bernard's testimony. As the two detectives approached the residence, they spotted the [petitioner] standing on the front porch. They approached the door and asked to speak [with] Dorothy Timothy. Detective Bernard had previously met Ms. Timothy and knew that she was physically disabled. Given permission to enter the residence, they were directed to Ms. Timothy who was resting in her bedroom and recognized Detective Bernard. They asked permission to speak to the [petitioner], and Ms. Timothy agreed provided that she could be present during the interview. The detective agreed. Ms. Timothy then summoned the [petitioner] into her room. Detective Bernard testified that, at this point, he was sitting at the foot of Ms. Timothy's bed[,] and Detective Biltmore was inside the room and that neither he nor Detective Biltmore had made any mention of the Fleming's Market robbery and homicide. Upon the [petitioner] entering the room, Ms. Timothy told the [petitioner] to "tell the truth." At this time, according to Detective Bernard's testimony, the [petitioner] was not under arrest, and the detectives were in the midst of conducting a non-critical interview in the course of a criminal investigation.

When the [petitioner] entered the room, Detective Bernard testified that he told the [petitioner] that he was not under arrest and that neither he nor Detective Biltmore did anything to limit the [petitioner's] movements. Detective Bernard then asked the [petitioner] where he was on December 25, 1999, and that the [petitioner] testified that he was at home. Detective Bernard

contradicted the [petitioner] and told him that they knew that he had used a telephone at Fleming's Market and that they knew whom he called. Ms. Timothy then told the [petitioner] to "tell the truth." Detective Bernard testified that neither he nor Detective Biltmore told either the [petitioner] or his grandmother that they were investigating a robbery/homicide at the market.

At this point, only a few minutes into the interview, the [petitioner] then admitted that he had robbed the market. Ms. Timothy then interrupted before Detective Bernard could continue to ask the [petitioner] two (2) to three (3) times, "what did you say?" and the [petitioner] again stated that he had robbed the market and had taken approximately $300 and had shot the clerk with a firearm in the commission of the crime.

The [petitioner] was then taken into custody after his statements to the detectives and transported to the Metro Criminal Justice Center where he was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 . . . (1966) prior to additional questioning. The [petitioner] then executed a signed *Miranda* waiver. At some point, while being transported or waiting to begin the videotaped interview but before being advised of his rights, he stated that he used a .25 caliber handgun in the commission of the crime. . . .

Based upon these actions, the petitioner was indicted for first degree murder and especially aggravated robbery. He filed an unsuccessful motion to suppress his confession upon the ground that it was unconstitutionally obtained in violation of *Miranda v. Arizona*. Thereafter, the petitioner pled guilty to the lesser offense of second degree murder, and the robbery charge was dismissed. Per the plea agreement, he received a forty-year sentence to be served at 100%.

In 2002, the petitioner filed a petition for post-conviction relief asserting that his guilty plea was not knowingly and voluntarily entered based upon ineffective assistance of counsel. Specifically, he contended that trial counsel was ineffective in failing to communicate with the petitioner and failing to investigate the facts of the case. The post-conviction court rejected the petitioner's argument and denied the petition; this court affirmed on appeal. *Timothy L. Jefferson v. State,* No. M2002-02393-CCA-R3-PC, 2004 WL 300121, at * 1 (Tenn. Crim. App. Feb. 17, 2004).

In August of 2010, the petitioner filed a pro se petition for a writ of habeas corpus where he attempted to relitigate issues raised in his post-conviction proceeding. The habeas corpus court issued an order denying the petition on November 23, 2010. No appeal was taken by the petitioner.

-4-

In August of 2011, the petitioner filed an untimely petition for the writ of error coram nobis again challenging the validity of his confessions. The coram nobis court, by written order, summarily dismissed the petition based upon the grounds that it was not timely filed and that it failed to state a claim cognizable in a coram nobis petition. The petitioner appealed to this court, and the dismissal was affirmed. *Timothy L. Jefferson v. State*, No. M2011-01653-CCA-R3-CO, 2012 WL 1951094 (Tenn. Crim. App. May 31, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012).

In January of 2014, the petitioner filed a second petition for the writ of error coram nobis, which is the subject of this appeal. In the petition, he asserted that the discovery that Detective Bernard had been the subject of multiple disciplinary proceedings constituted newly discovered evidence. On March 13, 2014, the coram nobis court issued a thorough and extensive order summarily dismissing the petition on the grounds that it was time-barred, previously litigated, and failed to state a claim cognizable for relief. Specifically, in its written order dismissing the petition, the coram nobis court stated as follows:

> . . . Said petition is Petitioner's second request for a writ of error coram nobis. The Court reminds Petitioner that in its August 20, 2011 Order denying the first petition for the writ of error coram nobis, this Court admonished Petitioner as follows:
>
>> Petitioner has exhausted all avenues of relief. Should Petitioner continue to file pleadings relitigating issues that have been resolved in this matter, the Court shall summarily dismiss said petition without issuing a written order and place Petitioner's filing in his court file.
>
> . . . This Court had reviewed Petitioner's second *pro se* petition for writ of coram nobis when filed and determined it lacked merit, hence, it was placed in Petitioner's file as he had been previously advised. Nonetheless, this Court issues this instant order. Having reviewed the instant petition for a writ of error coram nobis, this Court finds that it shall be denied on the basis that it is (1) time barred; (2) attempts to relitigate several claims that have already been addressed; and (3) failed to state a cognizable claim for relief.
>
>> . . . .
>
> Applying the *Harris* factors to the present case, the limitations period would have begun to run 30 days after Petitioner entered his guilty plea in August 2001. Like Petitioner's first petition for a writ of error coram nobis

filed in 2011, approximately 10 years later, the instant petition for writ of error coram nobis filed in 2014, is time barred.

The next step is to determine whether the grounds alleged in the coram nobis petition arose after the statute of limitations period expired, or in other words, whether the grounds were later-arising. Petitioner alleges that the statute of limitations should be tolled, citing *Workman*, and summarized the newly discovered evidence as follows:

> The Petitioner was informed that on September 16, 2004, Detective E.J. Bernard (the prosecuting witness in this case) had been under investigation by the Police Department's Office of Professional Accountability ("OPA"), and thereafter, upon conclusion of the investigation, Detective E.J. Bernard was found guilty of several counts of Misconduct. . . . This constitutes Newly Discovered Evidence, and based upon this information the Petition for Writ of Error Coram Nobis is filed. Detective Bernard is the same Detective to lead the investigation in this case, had been involved in Petitioner's arrest, and his overall role in the investigation, and prosecution in this case was vital in obtaining the conviction on August 2, 2001.

> . . . .

Petitioner cites that the order denying the motion to suppress, which is attached to his pro se petition, shows that Detective Bernard committed misconduct in Petitioner's case and used "illegal tactics in this case to coerce the Petitioner's statements at police headquarters." . . . Specifically, Petitioner states as follows:

> [I]n the course of a police criminal investigation, the Petitioner was arrested without a warrant[] at his residence, taken into police custody, and transported to police headquarters by Detective E.J. Bernard. Thereafter, while detained at police headquarters, the Petitioner was not charged, brought before the court, nor released, but instead[] Detective E.J. Bernard had subjected the Petitioner to an interrogation . . . the attached Motion to Suppress Order's record will show . . .

> The aforementioned facts constitute a forced trip to police

headquarters for merely investigative purposes[] that intruded upon the Petitioner's Freedom Of Movement, and Privacy, following the arrest without a warrant, and since the facts show that the detention was illegal, clearly unreasonable, motivated by ill will and imposed solely for the purposes of gathering evidence at police headquarters, the seizure is presumptively unreasonable, because it was carried out without a warrant, and therefore, these tactics violated the Petitioner's right to the Fourth Amendment's ban on Unreasonable Search and Seizure[,] triggering necessity for application of "Exclusionary Rule." The rule of Constitutional law that evidence secured by the police by means of an Unreasonable Search and Seizure, in violation of the Fourth Amendment, cannot be used as evidence in a criminal prosecution.

Had the Petitioner known that the statements obtained at the police headquarters (provided by law) could not be used against him, he would not have plead guilty, and therefore, since the Newly Discovered Evidence [a]ffects the voluntariness of the guilty plea, the Writ of Error Coram Nobis properly lies.

In short, Petitioner alleges that the discovery of Detective E.J. Bernard's disciplinary proceedings constitutes new evidence. The Court shall address in the next section the merits of his claim, but for purposes of determining whether time barred, the Court notes that Petitioner acknowledges in his petition that the proceedings were initiated against Detective Bernard in September 2004, approximately three years after Petitioner's conviction and nine years ago from the filing of his second petition. This Court takes judicial notice that the media publicized the case in 2004 and early 2005, particularly when Detective Bernard resigned while the investigation was pending. Additional publicity occurred in Fall 2006, when Detective Bernard died, and in 2007 when an appellate decision was issued. Even assuming *en arguendo* that the disciplinary proceedings against Detective Barnes constitute newly discovered evidence as contemplated by the law, Petitioner's second request for a writ of error coram nobis falls well outside the statute of limitations and Petitioner is not entitled to the process tolling. *See e.g., Billy Ray Irick v. State*, No. E2010-02385-CCA-R3-PD, 2011 WL 1991671 (Tenn. Crim. App., at Knoxville, May 23, 2011).

. . . .

-7-

Even if Petitioner had timely filed his petition, however, he fails to state a cognizable claim for a writ of error coram nobis. Petitioner is attempting to relitigate the issues concerning his initial detention and questioning by the police. Petitioner was afforded a pre-trial suppression hearing where these issues were raised. This Court denied petitioner's suppression motion in a written order, which Petitioner includes as an attachment to his instant filing. In said order, the Court applied the *Anderson* factors and concluded that Petitioner was not in custody for *Miranda* purposes. . . . After Petitioner's first interview with police, he was arrested and advised of his *Miranda* rights before any additional questioning; the second interview was conducted at the police station where it was recorded. . . .

Petitioner has tried to relitigate the suppression issue through his petitions for post-conviction relief and habeas corpus relief. Not only has the Court previously addressed the issues Petitioner re-raises but Petitioner has not shown that Detective Bernard engaged in any misconduct in Petitioner's case. . . . Petitioner's accusation against Detective Bernard is that the detective illegally seized and questioned petition[er] resulting in a coerced confession, a claim that he argues is corroborated by Detective Bernard's subsequent disciplinary charges. As stated, ad nauseam, the lawfulness of the seizure and interrogation have been litigated, both pre-trial and in collateral challenges.

Finally, Petitioner's conviction in the above-captioned case was entered pursuant to a guilty plea. A petitioner's plea of guilty constitues an admission in open court that the petitioner committed the acts charged in the indictment. . . .

The petitioner has timely appealed the dismissal of his petition.

**Analysis**

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Tennessee Code Annotated section 40-26-105(b) (2010) provides that coram nobis relief is available in criminal cases as follows:

The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by

the [petitioner] that the [petitioner] was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Our supreme court has stated the standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (citation omitted).

Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner establishes that he or she was "without fault" in failing to present the evidence at the proper time. *Harris v. State*, 102 S.W.3d 587, 592 (Tenn. 2003). Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. *Id*. at 592-93. The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. *Vasques*, 221 S.W.3d at 527-28.

A petition for the writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) that the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004). Newly discovered evidence is evidence that was unknown to the defendant at the time of the proceedings that are the subject of the coram nobis claim. *Wlodarz v. State*, 361 S.W.3d 490, 506 (Tenn. 2012). A narrow exception, however, exists where "'although not newly discovered evidence, in the usual sense of the term,'" the "'availability'" of the evidence "'is newly discovered.'" *Harris v. State*, 301 S.W.3d 141, 160 (Tenn. 2010) (Koch, J., concurring) (quoting *Taylor v. State*, 171 S.W.2d 403, 405 (Tenn. 1943)); *see also David G. Housler, Jr. v. State*, No. M2010-02183-CCA-R3-PC, 2013 Tenn. Crim. App. LEXIS 787, **127-28 (Tenn. Crim. App. Sept. 17, 2013). Courts have held repeatedly that a coram nobis court is not required to hold an evidentiary hearing when a petition for the writ of error coram nobis fails to meet the necessary prerequisites for granting relief. *Cole v. State*, 589 S.W.2d 941, 941-43 (Tenn. Crim. App. 1979).

Coram nobis claims are subject to a one-year statute of limitations. T.C.A. § 27-7-103. The statute of limitations is computed "from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are

filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris*, 301 S.W.3d at 144. The issue of whether a claim is barred by an applicable statute of limitations is a question of law, which this court reviews de novo. *Id*. We must construe the coram nobis statute of limitations "consistent with the longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Id*.

The one-year statute of limitations may be tolled on due process grounds if the petitioner seeks relief based upon newly discovered evidence. *Wilson v. State*, 367 S.W.3d 229, 234 (Tenn. 2012). In determining whether tolling is proper, the court must balance the petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Harris*, 301 S.W.3d at 145 (citing *Workman v. State*, 41 S.W.3d 100, 102 (Tenn. 2001)). Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule consists of three steps:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995).

On appeal, the petitioner raises multiple related issues in support of his argument that the petition for the writ of error coram nobis was improperly dismissed. Again, the coram nobis court denied relief to the petitioner on the basis that the statute of limitations had expired, that the issues were previously litigated, and that the claim was not cognizable in an error coram nobis proceeding. We agree with the court's findings.

## I. Veracity of Newly Discovered Evidence

First, the petitioner contends that the coram nobis court erred in "failing or refusing to consider the newly discovered evidence to be 'reasonably well satisfied' with its veracity, within the context of *Stephen Bernard Wlodarz v. State*, . . . and its progeny." He further contends that because neither the State nor the court addressed this issue, an irrebuttable presumption arose that the court was indeed "reasonably well satisfied" with the veracity of

the new evidence.

The petitioner's argument is somewhat confusing. The veracity of the newly discovered evidence, that the detective was the subject of multiple misconduct violations, is not questioned, which explains why it was not addressed by either the State or the court. It appears that there is no dispute to the truth of those statements. It further appears that the court, in making its determination, did in fact consider the newly discovered evidence as true. However, that fact does not entitle the petitioner to relief.

The court, considering the evidence to be true, concluded that the petitioner had failed to show that the new evidence might have affected the petitioner's determination of guilt. The court stated that the petitioner had failed to offer any evidence showing that there had been misconduct by the detective toward the petitioner. The court never concluded that the veracity of the evidence was in question. The petitioner's argument is simply misplaced, and he is entitled to no relief upon this ground.

## II. Effect of Newly Discovered Evidence

In a continuation of the above argument, the petitioner also contends that the coram nobis court erred in concluding that the newly discovered evidence "may" not have led to a different result. He states that "[h]ad the [petitioner] known that the statements obtained at police headquarters . . . , could not be used against him, he would not have plead[ed] guilty, and therefore, . . . as the newly discovered evidence in this case affect[ed] the voluntariness of the guilty plea, [the petitioner's] writ [of error coram nobis] properly lies."

Again, the petitioner's argument is perplexing. The newly discovered evidence is the detective's misconduct charges and investigation. How the petitioner reached the assumption that this evidence would have resulted in a different ruling at the motion to suppress is unclear. The petitioner appears to have presupposed incorrectly that to be a fact. He is simply not applying the proper standard.

The motion to suppress was argued and heard before the trial court, and its denial was affirmed on appeal. The coram nobis court explained in its order that the issue was not to be relitigated. Again, the petitioner cannot presume facts and base his argument upon those presumptive facts. Despite the petitioner's argument to the contrary, the validity of his confessions is no longer an issue that will afford him relief.

## III. Statute of Limitations-Waiver

As his next argument, the petitioner contends that the coram nobis court erred in

concluding that the petition was barred by the statute of limitations. On appeal, he argues that because the State failed to raise the statute of limitations as an affirmative defense, the court cannot rely upon that ground because it is now waived.

The petitioner is correct that the statute of limitations is an affirmative defense which the State bears the burden of raising. *Harris*, 102 S.W.3d at 594. The petitioner is further correct that the State did not raise the defense in this case. The record shows that the coram nobis court sua sponte dismissed the petition without giving the State a chance to file responsive pleadings.

However, the record also makes clear that the petitioner was aware and anticipated the statute of limitations being raised, as his petition asserted reasons why he believed the statute should be tolled. His argument ignores that our supreme court has said, "Although Tenn. R. Civ. P. 8.03 does require that a statute of limitations defense be specifically pleaded, it is well settled that failure to do so does not result in a waiver of the defense if the opposing party is given fair notice of the defense and an opportunity to rebut it." *Sands*, 903 S.W.2d at 299. Here, the record supports that the petitioner was aware of the statute of limitations issue and that he made allegations in a presumptive attempt to rebut it as a defense. *See James E. Kenner v. State*, No. M2011-01131-CCA-R3-CO, 2012 Tenn. Crim. App. LEXIS 242, *6 (Tenn. Crim. App. Apr. 23, 2012). Thus, the defense was not waived.

We further note that the petitioner, on appeal, fails to challenge application of the statute of limitations on any other grounds, including due process. There is no dispute that the petitioner filed the instant petition well outside the applicable statute of limitations. Moreover, as noted by the court, the information regarding Detective Bernard's disciplinary proceedings was made public and received a great deal of attention several years prior to the petitioner's filing. Thus, even if we were to consider the new evidence as a "later-arising claim," the petitioner cannot show that he was denied a reasonable opportunity to present the claim. The petitioner offers no explanation for the delay in filing his petition. Thus, the error coram nobis court was correct in concluding that due process did not require tolling the statute of limitations. Based upon these conclusions, dismissal of the petition was proper solely on this ground.

## IV. Motion to Suppress

Finally, the petitioner contends that the court "committed an abuse of discretion, and reached an illogical conclusion by intentionally misstating, ignoring, and knowingly sidestepping the fact that the Motion to Suppress Order is not attached to the [petitioner's] petition to re-litigate any issue, and is merely an exhibit of best evidence to show the court 'the reason the newly discovered evidence 'may have' resulted in a different judgment if the

evidence had been admitted at the previous trial[.]'" We note, however, that the rest of the argument section for this issue appears to be related only to why the motion to suppress should have been granted because of an unreasonable search and seizure.

Again, the petitioner's argument must fail. Even if the petition had been timely filed, the court also dismissed the petition for failure to state a cognizable claim for relief. Despite the petitioner's best efforts to convince this court otherwise, his entire argument appears to be based on the assumption that the motion to suppress issue can be relitigated. As pointed out above, the petitioner has repeatedly challenged his detention and questioning by police. Each time, he has been granted no relief. He has presented no new evidence which would change those decisions. As pointed out by the State, to the extent that the voluntariness of his statement affects the voluntariness of his guilty plea, the record again reflects that the issue was litigated in his post-conviction proceedings. The court correctly noted that the motion to suppress issue was final and could not be relitigated.

The petitioner has shown no new evidence directly related to his case. He has shown nothing with regard to any misconduct upon the specific facts of his case. All the petitioner has shown is that the detective was found guilty of misconduct in other matters.

The writ of error coram nobis is '"not a 'catch-all' remedy that enables convicted persons to 'litigate and relitigate the propriety of their convictions *ad infinitum*."' *Harris*, 301 S.W.3d at 148 (Koch, J. and Clark, J., concurring) (quoting *People v. Hyung Joon Kim*, 202 P.3d 436, 447 (Cal. 2009)). We conclude that the petition was filed beyond the statute of limitations and that the petitioner has not stated a cognizable ground for relief.

## CONCLUSION

Based upon the foregoing, the dismissal of the petition for the writ of error coram nobis is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-13-